ESTATE OF JOSEPH E. RIDENOUR, DECEASED, JAMES R. RIDENOUR, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Ridenour v. Commissioner
Docket No. 6367-91
United States Tax Court
T.C. Memo 1993-41; 1993 Tax Ct. Memo LEXIS 39; 65 T.C.M. (CCH) 1850; February 2, 1993, Filed *39 Decision will be entered under Rule 155. For Petitioner: Benham M. Black. For Respondent: John C. McDougal. WELLS
WELLS
MEMORANDUM OPINION WELLS, Judge: Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $ 37,423.30. After a concession, the issue to be decided involves certain gifts made on behalf of Joseph E. Ridenour (decedent) by his attorney-in-fact pursuant to a durable general power of attorney, which gifts, if they are not authorized by the power of attorney under Virginia law, are voidable and must be included in decedent's gross estate pursuant to section 2038 as revocable transfers. We must decide whether a State statute which provides that it is "declaratory of existing law" and authorizes attorneys-in-fact to make gifts in accordance with the principal's personal history of making or joining in lifetime gifts retroactively authorizes the gifts in question. If we decide that such statute is retroactive, then we must decide whether such gifts were made in compliance with the statute. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at the time of decedent's death, and all Rule references *40 are to the Tax Court Rules of Practice and Procedure. All of the facts and documents relevant to the instant case have been stipulated. By this reference, we incorporate the stipulated facts in this Memorandum Opinion. Petitioner is the Estate of Joseph E. Ridenour. Decedent was a resident of Staunton, Virginia, at the time of his death. Decedent's estate is being administered through the Circuit Court of the City of Staunton, Virginia. Decedent was born on November 6, 1906. On January 10, 1929, decedent married Catherine N. Ridenour (Mrs. Ridenour). At the time of their marriage neither decedent nor Mrs. Ridenour had previously been married. Mrs. Ridenour and decedent established their home in Staunton, Virginia, during 1939 and they lived there until their respective deaths. Mrs. Ridenour died on July 18, 1982. Decedent and Mrs. Ridenour had one son, James R. Ridenour. On August 19, 1952, James R. Ridenour married Patricia S. Ridenour, and they have resided in Staunton, Virginia, since 1954. James R. Ridenour and Patricia S. Ridenour have four children: James R. Ridenour, Jr., Susan Ridenour McGinley, Deborah Ridenour Wykowski, and Gregory K. Ridenour. In 1955, decedent, *41 James R. Ridenour, and W. L. Hall formed Valley Oil Corp. (Valley Oil), which operated as a jobber for Phillips Petroleum. Decedent was the principal shareholder. Since 1962 or 1963, however, the stock in Valley Oil had been solely owned by decedent and his descendants. Decedent sought advice from his accountant for himself and Valley Oil. Decedent also was alert to tax planning ideas, suggestions, and articles in newspapers and trade journals that bore on his tax planning. Generally, when decedent learned of tax planning opportunities, he conferred with his accountant to decide whether such ideas should be incorporated into his tax planning or the tax planning of Valley Oil. Decedent also undertook planning for his estate. On May 27, 1971, decedent executed a will which took advantage of the maximum marital deduction allowed for Federal estate tax purposes. On May 13, 1977, decedent revised his estate plan and executed a new will containing a provision for a "Marital Trust" and "Family Trust", the purpose of which was to take maximum advantage of the marital deduction as permitted under the Federal estate tax laws. On April 22, 1980, decedent executed the first codicil to *42 his will. The codicil revised certain specific bequests and amended the provision in his will relating to the apportionment of estate taxes. On February 10, 1982, decedent executed a second codicil to his will. The second codicil updated the provision in his will relating to the funding of his Marital Trust and made special provision for the equalization of Mrs. Ridenour's estate and his estate in the event their deaths occurred within 5 months of each other. On May 28, 1971, decedent signed a power of attorney appointing James R. Ridenour as his attorney-in-fact. On January 12, 1987, immediately prior to leaving on a trip to Florida, decedent could not locate copies of such power of attorney. Decedent therefore executed another power of attorney. The January 12, 1987, power of attorney contained the following language: KNOW ALL MEN BY THESE PRESENTS, that I, J. E. Ridenour, sometimes known as Joseph E. Ridenour, whose full name is Joseph Elmer Ridenour, do hereby make, constitute, and appoint my son, James R. Ridenour, Sr., my true and lawful attorney-in-fact for me and in my name, place and stead to do, execute and perform all and every act, matter and thing in law or *43 in judgment of my said attorney needful or desirable to be done in relation to all or any part of my property, estate, affairs, and business of any kind or description as fully and amply, and with the same effect, as I myself, might or could do if acting personally. Without limiting the generality of the foregoing, my attorney is hereby empowered: 1. To ask, demand, sue for, recover, and receive, of and from all corporations, associations, and persons whomsoever, all and every sum or sums of money due and owing, or that may become due and owing to me on any and every account, and give receipts for the same, and to give discharges; 2. To sign any bond, note, deed, contract, check or other instrument; 3. To borrow money, and to execute and enforce promissory notes, and to renew the same from time to time; 4. To draw upon any bank, corporation, association, or individual, for any sum or sums of money that may be to my credit, or which I may be entitled to receive, and to endorse any checks or other instruments payable to me; 5. To execute and file any income tax returns required by any Act or Acts of Congress to be made by me; also, any other tax return required by any State *44 or political subdivision thereof; 6. To vote in person or by proxy upon all stocks, bonds, and other securities standing in my name, and to sell, exchange, or otherwise dispose of the same, and to execute any and all assignments and transfers incident thereto; to consent to the consolidation, reorganization or merger of any corporation in which securities I may be interested; to pay all assessments, subscriptions, or other sums of money deemed expedient for my protection as holder of any securities; to exercise any option contained in any such securities for conversion thereof into other securities, and to take advantage of any rights to subscribe for additional securities, and to make necessary payments therefor and to execute any and all necessary instruments or other papers in and about the same; 7. To sell, exchange, mortgage, lease, option or otherwise dispose of any part or all of my property or estate, both real and personal, wherever situated, and to make all necessary deeds, assignments, transfers and conveyances thereof, with all necessary covenants, warranties, and assurances, and to sign, seal, acknowledge and deliver the same; 8. To operate fully and completely *45 any business owned by me or to participate as fully and completely as I, myself, might or could do in any business in which I might have an interest in the operation thereof with full power to do and perform each and every thing necessary, convenient or desirable for the operation of such business; and; 9. To enter any safe deposit box in my name to place any items therein, to inspect the contents, or to remove any items therefrom; I hereby ratify all lawful acts done by my said attorney by virtue hereof. The Power of Attorney and the authority given herein shall not terminate on the disability, incompetency or incapacity of J. E. Ridenour from any cause whatsoever, and shall in such event continue and be exercisable by my said attorney-in-fact on my behalf notwithstanding such disability, incompetency or incapacity. Prior to signing the power of attorney in May 1971, decedent made the following gifts for which gift tax returns were filed: (1) During August 1958, decedent made a gift of life insurance policies to an irrevocable trust for the benefit of Mrs. Ridenour. The gift was valued based upon the net cash value of the policies of $ 4,924.49. (2) On May 12, 1966, decedent *46 gave James R. Ridenour 29 shares of Valley Oil valued at $ 2,908.41. On August 8, 1966, decedent gave James R. Ridenour an additional 271 shares of Valley Oil valued at $ 29,539. (3) On October 7, 1967, decedent gave James R. Ridenour 116 shares of Valley Oil valued at $ 12,678.80. After signing the power of attorney in May 1971, decedent made the following gifts of Valley Oil stock, for which gift tax returns were filed: (1) On December 8, 1972, decedent gave James R. Ridenour 155 shares valued at $ 30,810.90. (2) On December 27, 1974, decedent gave James R. Ridenour 134 shares of Valley Oil valued at $ 25,423.82. (3) On December 27, 1974, decedent gave his grandson, James R. Ridenour, Jr., 50 shares of Valley Oil valued at $ 9,486.50. (4) On December 27, 1974, decedent gave to his granddaughter, Susan Ridenour, 50 shares of Valley Oil valued at $ 9,486.50. (5) On December 27, 1974, decedent gave his granddaughter, Deborah Ridenour, 50 shares of Valley Oil valued at $ 9,486.50. (6) On December 27, 1974, decedent gave his grandson, Gregory Ridenour, 50 shares of Valley Oil valued at $ 9,486.50. (7) On June 23, 1980, decedent gave his grandson, James R. Ridenour, Jr., 47 shares *47 of Valley Oil valued at $ 5,933.28. (8) On June 11, 1981, decedent gave his grandson, James R. Ridenour, Jr., 25 shares of Valley Oil valued at $ 6,000. (9) On December 13, 1983, decedent gave his grandson, James R. Ridenour, Jr., 48 shares of Valley Oil valued at $ 9,830.88. From December 13, 1983, until decedent's death on April 15, 1987, the stockholders of Valley Oil Corp. were: Stockholder
Number of Shares
Decedent
309
James R. Ridenour
1,171
James R. Ridenour, Jr.
170
Susan Ridenour
50
Gregory Ridenour
50
Deborah Ridenour
50
On March 9, 1979, decedent made a cash gift of $ 2,500 to his sister, Helen J. Givney. On August 20, 1979, decedent made a cash gift of $ 3,500 to his grandson, James R. Ridenour, Jr. On January 22, 1982, decedent gave Mrs. Ridenour certain real estate located in Waynesboro, Virginia. The purpose of the gift was to place assets in Mrs. Ridenour's name so that if she predeceased decedent, her exemption equivalent for Federal estate tax purposes would be funded. Decedent regularly made Christmas and birthday gifts to his son, daughter-in-law, grandchildren, and great-grandchildren. During or near December 1986, decedent began suffering *48 from acute renal failure, brought on by long-standing congestive heart disease. Beginning about March 20, 1987, he was not able to communicate effectively with others. On March 27, 1987, James R. Ridenour, acting as decedent's attorney-in-fact, made gifts by delivering checks, each in the amount of $ 9,500, drawn on decedent's accounts at First Virginia Bank of Augusta to the following relatives of decedent: Relationship to
Check No.
Payee
J.E. Ridenour
628
James R. Ridenour
son
629
Patricia Ridenour
daughter-in-law
630
James R. Ridenour, Jr.
grandson
631
Gregory K. Ridenour
grandson
632
Deborah A. Ridenour
granddaughter
633
Susan Ridenour McGinley
granddaughter
634
Michael McGinley
great-grandson
635
Mark McGinley
great-grandson
636
Elizabeth McGinley
great-granddaughter
The March 27, 1987, gifts (hereinafter collectively referred to as the gifts) were made for estate planning purposes, i.e., to transfer assets to the natural objects of decedent's bounty and for the purpose of reducing his gross estate and minimizing estate taxes. The gifts were made without any intent to defraud decedent. In making the gifts, James R. Ridenour believed that he was acting in *49 the best interests of decedent. Decedent and James R. Ridenour did not specifically discuss the making of the gifts. On April 15, 1987, decedent died of acute renal failure. On January 15, 1988, petitioner timely filed a Federal estate tax return (Form 706). The estate tax return reported a total gross estate of approximately $ 1,200,000, consisting primarily of approximately $ 388,000 of real estate, $ 248,000 of stocks and bonds, and $ 495,502 of certificates of deposit, notes, and a claim against the trust under the will of decedent's spouse. After deducting the gifts, the balance in decedent's checking account was $ 916 and decedent had $ 150 cash on hand. The gifts were not included on petitioner's estate tax return. Respondent determined that the gifts were revocable transfers which should have been included on Schedule G of petitioner's estate tax return pursuant to section 2038. The issue we first decide is whether a statute enacted by the Virginia General Assembly and signed by the Governor of Virginia on March 30, 1992, is retroactive so as to authorize the gifts in question. If, under Virginia law, the gifts in question are not authorized by the power of attorney *50 executed by decedent, the gifts are voidable, and, therefore, must be included in decedent's gross estate pursuant to section 2038 as revocable transfers. Estate of Casey v. Commissioner, 948 F.2d 895 (4th Cir. 1991), revg. T.C. Memo. 1989-511. In Estate of Casey, which involved similar questions of Virginia law regarding the power of an attorney-in-fact to make gifts of his principal's property pursuant to a general power of attorney that does not expressly grant such a power, the Court of Appeals for the Fourth Circuit stated: we believe that the Virginia Supreme Court might well adopt, as a matter of policy, a flat rule that the unrestricted power to make gifts will not be found in any formally drawn, comprehensive, durable power of attorney that does not expressly grant it. * * * [Id. at 898.] Accordingly, respondent argues that the Court of Appeals' opinion in Estate of Casey is "squarely in point" as to such questions. Lardas v. Commissioner, 99 T.C.     (1992); Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971). *51 The Virginia statute in question in the instant case, however, was enacted subsequent to the issuance of the Court of Appeals' opinion and therefore the opinion is not squarely in point. As the Court of Appeals itself recognized: "Virginia has not, so far as we are advised, adopted any such flat rule, else our task here would be quickly done." Estate of Casey v. Commissioner, supra at 898. Accordingly, we will turn to the question of whether the Virginia statute should be applied retroactively. The Virginia statute, Va. Code Ann. section 11-9.5 (Michie Supp. 1992), passed by the General Assembly and signed by the Governor March 30, 1992, provides as follows: Section 11-9.5. Gifts under power of attorney -- A. If any power of attorney or other writing (i) authorizes any attorney-in-fact or other agent to do, execute, or perform any act that the principal might or could do or (ii) evidences the principal's intent to give the attorney-in-fact or agent full power to handle the principal's affairs or deal with the principal's property, the attorney-in-fact or agent shall have the power and authority to make gifts in any amount of any of the principal's *52 property to any individuals or to organizations described in sections 170(c) and 2522(a) of the Internal Revenue Code or corresponding future provisions of federal tax law, or both, in accordance with the principal's personal history of making or joining in the making of lifetime gifts. B. Subsection A shall not in any way impair the right or power of any principal, by express words in the power of attorney or other writing, to authorize, or limit the authority of, any attorney-in-fact or other agent to make gifts of the principal's property. C. After reasonable notice to the principal, an attorney-in-fact or other agent acting under a durable general power of attorney or other writing may petition the circuit court for authority to make gifts of the principal's property to the extent not inconsistent with the express terms of the power of attorney or other writing. The court shall determine the amounts, recipients and proportions of any gifts of the principal's property after considering all relevant factors including, without limitation, (i) the size of the principal's estate, (ii) the principal's foreseeable obligations and maintenance needs, (iii) the principal's personal *53 history of making, or joining in the making of lifetime gifts, (iv) the principal's estate plan, and (v) the tax effects of the gifts. * * * The Virginia General Assembly also provided that subsections A and B are "declaratory of existing law". 1992 Va. Acts ch. 544. In considering whether the Virginia statute is retroactive or prospective only, in the absence of direct authority on the issue, we must decide what the Virginia Supreme Court would conclude. Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967); Estate of Casey v. Commissioner, supra. We begin our analysis of the issue by noting that the Virginia General Assembly has the power to create retroactive statutes. Eaton v. Davis, 10 S.E.2d 893, 896 (Va. 1940); Ferguson v. Ferguson, 192 S.E. 774, 777 (Va. 1938). Virginia courts, however, generally presume statutes to be prospective in operation, unless the General Assembly has expressed a contrary intention. Duffy v. Hartsock, 46 S.E.2d 570, 575 (Va. 1948); Ferguson v. Ferguson, supra. *54 When the General Assembly has used language such as "heretofore and hereafter" in statutes, the Virginia Supreme Court has generally found such language to be indicative of an intention that the statute be retroactive. Duffy v. Hartsock, supra; Gloucester Realty Corp. v. Guthrie, 30 S.E.2d 686, 688 (Va. 1944). A statute, however, need not expressly state that it is retroactive. Papen v. Papen, 224 S.E.2d 153 (Va. 1976); Hagen v. Hagen, 139 S.E.2d 821 (Va. 1965). "In the absence of expressed provisions, the intent must be gleaned from legislative history, statutory scheme and purpose, and principles of statutory construction." Booth v. Booth, 371 S.E.2d 569, 571-572 (Va. Ct. App. 1988). In the instant case, the Virginia statute provides that any power of attorney which authorizes the attorney-in-fact to perform any act that the principal might or could do shall confer the authority to make gifts which are in accordance with the principal's personal history of making lifetime gifts, unless expressly provided otherwise. *55 The Virginia General Assembly expressly provided that such provisions are "declaratory of existing law". Although the statute does not expressly state that such provisions are retroactive, the statement that they are "declaratory of existing law" indicates to us that the General Assembly intended that such provisions are to be retroactive. Clearly, such a statement cannot be construed as an expression that such statute is to be prospective only. A prospective-only interpretation of such statement would create a trap for unwary attorneys-in-fact acting under general powers of attorney which do not contain express provisions to make gifts. If such documents were signed prior to enactment, a prospective-only interpretation would lead to a conclusion that gifts made after the enactment of the statute pursuant to such pre-existing documents would be voidable. We decline to interpret the statute in such a manner. The phrase "declaratory of existing law" appears to us to be calculated to invite reliance upon the statute by attorneys-in-fact who are operating under powers of attorney executed prior to enactment of the statute. We find additional support for our conclusion in the substantive *56 language of the statute. The words "any power of attorney" in subsection A of the statute are comprehensive and suggest that they include powers of attorney created before as well as after the statute's enactment. See Hagen v. Hagen, supra at 824; Allen v. Mottley Const. Co., 170 S.E. 412, 416 (Va. 1933). Based upon the foregoing, we hold that the Virginia Supreme Court would conclude that the Virginia General Assembly intended for the statute to have retroactive application under the circumstances of the instant case. The retroactive application of a statute is generally valid, however, only if it neither impairs contractual obligations nor destroys vested rights. Hagen v. Hagen, supra at 824; Eaton v. Davis, supra at 896. A vested right is "a right, so fixed, that it is not dependent on any future act, contingency, or decision to make it more secure." Bain v. Boykin, 23 S.E.2d 127, 129 (Va. 1942). Moreover, a statute may not be retroactively applied if it impairs substantive rights. Shiflet v. Eller, 319 S.E.2d 750, 753 (Va. 1984). *57 Substantive rights * * * are included within that part of the law dealing with creation of duties, rights, and obligations, as opposed to procedural or remedial law, which prescribes methods of obtaining redress or enforcement of rights. * * * [Id. at 754.] We do not believe that retroactive application of the statute impairs any vested substantive rights. No one can claim to have a vested interest in preventing a gift of the principal's property by the attorney-in-fact. The principal's potential heirs or legatees do not have vested rights in the principal's property. At the time of the gift, the right of the principal's heirs and legatees to inherit the principal's property is contingent upon many events, such as surviving the principal, the terms of the principal's will, if any, and even the existence of the property at the principal's death. As to potential creditors, they have the protection of fraudulent transfer and insolvency laws and other such laws protecting creditors against transferees of property transferred without adequate consideration. Nor do we find that retroactive application of the statute impairs contractual rights. *58 The statute only applies to powers of attorney which authorize an attorney-in-fact or other agent to do, execute, or perform any act that the principal might or could do or * * * evidences the principal's intent to give the attorney-in-fact or agent full power to handle the principal's affairs or * * * property. [Va. Code Ann. section 11-9.5] If the principal were bound by certain contractual obligations, the attorney-in-fact would only have the power to do what the principal could have done. Consequently, any contractual rights to which the principal is bound would have to be respected by the attorney-in-fact. Nor does retroactive application of the statute limit the rights of the principal to be protected by the fiduciary obligations owed by the attorney-in-fact to the principal. The statute permits only gifts that are in accordance with the principal's personal history of making gifts; other gifts are not protected by the statute. The enactment of the statute by the Virginia General Assembly appears to elevate the policy of preferring the continuation of the principal's estate planning over the protection of the principal from an unwanted gift or a breach of the fiduciary *59 obligation that the attorney-in-fact owes to the principal. In that regard, it should be noted that in the instant case the parties stipulated that the gifts in question were made without any intent to defraud decedent. Based upon the foregoing, we conclude that the Virginia Supreme Court would hold that retroactive application of the statute in question would be valid. Finally, we consider whether the gifts made by decedent's attorney-in-fact come within the language of the statute. The Virginia statute permits the attorney-in-fact to make only those gifts that are in accordance with the principal's personal history of making lifetime gifts. Respondent argues that the gifts made in the instant case are not authorized by the Virginia statute for three reasons. Respondent contends that the gifts are remote in time and differ in kind from decedent's previous gifts, and that they are made to donees who never received gifts from decedent during his lifetime. We do not agree with respondent's reading of the statute. The statute only requires the gifts to be in accordance with a principal's personal history of making lifetime gifts. As the statute speaks of the principal's personal *60 history in terms of "lifetime gifts", we conclude that the General Assembly meant what it said, and we do not think that the Virginia courts would read into the statute a strict time limit on which lifetime gifts can be considered within a principal's personal history. Even if they would, we do not think that the fact that the gifts in question were made 4 years after decedent's previous gifts would cause the gifts in question to be too remote to be considered as part of his "personal history of lifetime gifts". As to respondent's contention that the gifts differ in kind, we do not read the phrase "in accordance with" to mean "identical" or "the same as". Rather, we think the Virginia courts would give the phrase its usual meaning, i.e., "consistent with". Webster's Third New International Dictionary (1981). To interpret the statute as meaning "identical" would unduly restrict an attorney-in-fact from making a valid gift under the statute. In any event, the gifts in question were in cash and, although decedent's personal gift-giving history consisted largely of gifts of Valley Oil stock, it also included gifts of cash. As to respondent's contention that gifts may be made only *61 to the same people that received previous gifts from the principal, we disagree. Decedent's lifetime gift-giving history included gifts to his son and grandchildren. The gifts in question were to his son, the wife of decedent's son, the children of decedent's son, and the grandchildren of decedent's son. As the gifts in question were made to the natural objects of decedent's bounty and his daughter-in-law, we conclude that they are in accordance with decedent's personal lifetime gift-giving history. In summary, we hold that the Virginia Supreme Court would conclude that decedent's attorney-in-fact had the power under the Virginia statute to make the gifts in question. Consequently, the gifts are not revocable transfers to be included in decedent's estate pursuant to section 2038. We have considered the parties' remaining arguments and find them to be without merit. To reflect the foregoing, Decision will be entered under Rule 155.