T.C. Memo. 2000-328

UNITED STATES TAX COURT

RONALD J. AND LINDA GABRIEL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25660-95.            Filed October 20, 2000.

<u>Arthur I. Fixler</u>, for petitioners.

<u>Carmino J. Santaniello</u>, for respondent.

MEMORANDUM OPINION

GOLDBERG, <u>Special Trial Judge</u>:  This case was assigned
pursuant to the provisions of section 7443A(b)(3) and Rules 180,
181, and 182.  This matter is before the Court on Respondent's
Motion for Summary Judgment filed pursuant to Rule 121.  Unless
otherwise indicated, section references are to the Internal
Revenue Code in effect for the year in issue, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' Federal income tax in the amount of $5,612 for the taxable year 1992. The sole issue for decision is whether pension payments of $20,514 are excludable from gross income for the 1992 taxable year under section 104(a)(1) or section 1.104-1(b), Income Tax Regs.

At the time of filing the petition, petitioners resided in Wickford, Rhode Island. Petitioners are husband and wife. References to petitioner are to Ronald J. Gabriel.

Petitioner began working as a firefighter with the city of Cranston (the city), Rhode Island, in approximately 1973. Petitioner received several promotions throughout his career and ultimately rose to the rank of lieutenant. During his employment with the city, petitioner was a member of the International Association of Firefighters, Local 1363 (the union), and was covered by a collective bargaining agreement between the city and the union.

On February 1, 1983, petitioner was placed on occupational injury leave because of a heart problem. On November 4, 1983, petitioner's physician, Dr. Ronald M. Gilman, wrote a letter to Ronald Jones (Chief Jones), Chief of the Cranston Fire Department, advising him that petitioner would not be able to return to duty because of his heart condition. Accordingly, on December 13, 1983, Chief Jones recommended to Mayor Edward D.

DiPrete that petitioner be placed on a disability pension. Petitioner retired from the Cranston Fire Department in January 1984.

At the time of his retirement, petitioner, who was not 55 years old and was a member of the city's permanent fire department, was entitled to a pension equal to 50 percent of his annual salary under Cranston City Code Section 10-12 (section 10-12), payable from the firemen's pension fund. In 1984, section 10-12 did not distinguish between occupational injuries and nonoccupational injuries.

As a member of the union, petitioner was also entitled, in the alternative, to apply for disability benefits under section 24.4 of the collective bargaining agreement covering the period July 1, 1983, through June 30, 1984, which provided that if a fireman is "disabled from performing his regular duties as a fireman because of a heart condition * * * it shall be conclusively presumed that such disability is attributable to his employment as a member of the Fire Department". The record does not state which plan petitioner claimed disability payments under, that is section 10-12 or section 24.4.

On June 28, 1999, the Cranston City Council (the city council) amended section 10-12 to provide for both occupational and nonoccupational disability payments equal to 66-2/3 percent and 50 percent of the retiree's total annual compensation,

respectively. According to the language of amended section 10-12, A.4., occupational disability payments paid under the statute "shall be considered to be paid in lieu of Worker's Compensation benefits." In addition, second paragraph J of amended section 10-12 allows prior retirees to apply for recertification of pension benefits and for the retroactive redesignation of pension payments already received as payments for occupational disability received "in lieu of Worker's Compensation". Section 10-12 was further amended on November 22, 1999, by adding Paragraph L, entitled "Retroactive Redesignation of Certain Disability Pensions", which permitted retired firefighters to "redesignate benefits as occupational disability." On January 26, 2000, petitioner requested a recertification of his benefits as payments for an occupational injury under the amended local ordinance. Filed with petitioner's request for recertification was a letter dated January 29, 2000, from petitioner's physician, Henry E. Black, M.D. FACC. On February 28, 2000, the Cranston city council approved petitioner's request for recertification. Petitioner then applied to have his recertified disability pension amounts retroactively applied to the years 1992 through 1998. On March 27, 2000, petitioner's request for retroactive redesignation of pension benefits received in years 1992 through 1998 was unanimously approved at a regular meeting of the Cranston city council.

On their 1992 Federal income tax return, petitioners reported total pension and annuity income in the amount of $22,010, of which they included $1,496 in their gross income for that year.

In the notice of deficiency, respondent determined that no portion of petitioner's pension for the 1992 taxable year was excludable from gross income and increased petitioners' 1992 taxable income in the amount of $20,514.[1]  Respondent also made computational adjustments to petitioners' Schedule A itemized medical and dental expense deductions which increased petitioners' taxable income an additional $1,538.58 for 1992.

Respondent filed a motion for summary judgment with this Court, together with supporting documents, on November 15, 1999. By Order dated November 17, 1999, the Court calendared the motion for hearing on February 14, 2000, and ordered petitioners to file an objection to Respondent's Motion for Summary Judgment on or before January 7, 2000.  Petitioners timely filed an objection to Respondent's Motion for Summary Judgment, together with supporting documents.  When the case was called for hearing on

---

[1]     This amount was calculated by the difference between $22,010 and $1,496 which was reported as gross income in their 1992 tax return.

February 14, 2000, respondent and counsel for petitioners appeared and were heard. Petitioners orally moved for a summary judgment in their favor.

Summary Judgment

Pursuant to Rule 121(b), a summary adjudication may be made "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that a decision may be rendered as a matter of law." The party opposing the motion cannot rest upon the allegations or denials in his pleadings, but must "set forth specific facts showing that there is a genuine issue for trial." Rule 121(d). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. See Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). There is no genuine issue as to any material fact with respect to the specific legal issue before us; thus, this matter is ripe for judgment on the issue as a matter of law. See Rule 121(d).

Respondent contends that petitioners may not exclude pension payment amounts received from the city during the year in issue from gross income because the amounts were not received under a worker's compensation act pursuant to section 104(a)(1), or a

statute in the nature of a worker's compensation act pursuant to section 1.104-1(b), Income Tax Regs.

Petitioners contend that petitioner received disability pension amounts from the city in accordance with section 104(a)(1) in 1992, or, in the alternative, that amended section 10-12 allows petitioner's previously received disability pension amounts to be retroactively redesignated and excluded from gross income during the year in issue pursuant to section 104(a)(1). We examine each of petitioners' contentions in turn.

Section 104(a)(1) and Section 1.104-1(b), Income Tax Regs.

Section 61(a) provides that gross income includes all income from whatever source derived. Certain income, however, may be specifically excluded from gross income. See sec. 61(b).

Under section 104(a)(1), worker's compensation amounts are excluded from gross income. However, such exclusions have been "strictly construed so as to conform with the general rule that all income is taxable unless it is specifically excluded." McDowell v. Commissioner, T.C. Memo. 1997-500; see Kane v. United States, 43 F.3d 1446,1449, 1451 (Fed. Cir. 1994); Take v. Commissioner, 804 F.2d 553, 558 (9th Cir. 1986), affg. 82 T.C. 630 (1984).

Section 104(a)(1) excludes from gross income "amounts received under workmen's compensation acts as compensation for personal injuries or sickness". Section 1.104-1(b), Income Tax

Regs., interprets section 104(a)(1) to exempt amounts received under a worker's compensation act, or under a statute "in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment."

In this case, the record does not reflect whether petitioner received his disability payments under section 10-12 of the Cranston City Code or section 24.4 of the collective bargaining agreement between the city and the union. We therefore examine both section 10-12 and section 24.4 to decide whether petitioner's disability payments are excludable from gross income pursuant to section 104(a)(1) or section 1.104-1(b), Income Tax Regs.

Prior to amendment, the pertinent parts of section 10-12, in effect when petitioner retired in January 1984, provided as follows:

> Whenever an officer or member of the permanent fire department who has not attained fifty-five years of age shall become unfit to perform active duty by reason of physical infirmity or other causes, such officer or member upon the recommendation in writing of the mayor, may, in the discretion of the city council by a majority vote of the city council, be retired from active service and placed on the pension list, and when so retired he shall be paid annually from the firemen's pension fund in equal monthly payments until his fifty-fifth birthday a sum equal to one-half of his annual salary as defined in subsection (c) of the preceding section.

Upon attaining fifty-five years of age, such officer or member so retired shall be paid annually for the remainder of his life in equal monthly installments, a sum equal to fifty-five percent of his annual salary.

As is clear from its language, section 10-12 did not distinguish between work-related injuries and nonwork-related injuries. A disabled firefighter who was unable to perform his duties was eligible for disability benefits regardless of the cause of such disability. A statute is not considered to be in the nature of a worker's compensation act if it allows for disability payments for any reason other than on-the-job injuries. See Haar v. Commissioner, 78 T.C. 864, 868 (1982), affd. per curiam 709 F.2d 1206 (8th Cir. 1983); McDowell v. Commissioner, supra.

Since section 10-12 provides disability pension payments to all firefighters who "become unfit to perform active duty by reason of physical infirmity or other causes" and does not distinguish between injuries which are work-related and nonwork-related, it is not in the nature of a workers' compensation act as required by section 104(a)(1). See Brooks v. Commissioner, T.C. Memo. 1997-568.

We now turn to section 24.4, which provides as follows:

Section 24.4 - PRESUMPTION OF DISABILITY
In any case where an employee covered by this Agreement is disabled from performing his regular duties as a fireman because of heart condition, respiratory ailment, hypertension or from any condition derived from hypertension, it shall be conclusively presumed

that such disability is attributable to his employment as a member of the Fire Department, and he shall be entitled to all of the benefits provided for in Section 45-19-1 of the General Laws of Rhode Island, 1956, as amended, and none of said period of disability shall be deducted from his sick leave entitlement, nor from any other leave entitlement to which said employee may be entitled under any other terms or conditions of this Agreement.

Petitioners have not alleged that section 24.4, itself, qualifies as a statute, and, indeed, we find that it does not. See Rutter v. Commissioner, 760 F.2d 466, 468 (2d Cir. 1985) (labor contract does not qualify as a "statute" within the meaning of section 1.104-1(b), Income Tax Regs), affg. T.C. Memo. 1984-525; Brooks v. Commissioner, supra; McDowell v. Commissioner, supra.

Since section 24.4 is not a worker's compensation act, and is not a statute in the nature of a workmen's compensation act as required by section 1.104-1(b), Income Tax Regs., payments received under section 24.4 are not exempt from gross income pursuant to section 104(a)(1). In addition, like section 10-12, section 24.4 also fails to distinguish between work-related injuries and nonwork-related injuries as required by section 104(a)(1). The conclusive presumption in section 24.4 that a disabling heart condition is work-related fails to satisfy the requirements of section 104(a)(1) in that respect. See, e.g., Take v. Commissioner, supra; Green v. Commissioner, T.C. Memo. 1994-264, affd. 60 F.3d 142 (2d Cir. 1995).

Retroactive Effect of Amended Section 10-12

In the alternative, petitioners contend that section 10-12, as amended in 1999, allows disability pension amounts previously received by petitioner to be retroactively redesignated by the city council as payment for an occupational disability and thus excluded from gross income pursuant to section 104(a)(1). Section 10-12, as amended in 1999, contains the following recertification procedure for prior retirees:

L. RETROACTIVE REDESIGNATION OF CERTAIN DISABILITY PENSIONS

1. Any member/retiree who qualifies for and elects to apply under 10-12K for recertification for occupational disability retirement may, at his or her separate election as provided herein, apply for retroactive redesignation of prior disability pension benefits as an occupational disability pension, as defined in 10-12A, subject to the following limitations and conditions:

a) no additional pension benefits will be payable by the City if the retroactive designation is approved;

b) The retroactive redesignation will apply to disability pension benefits paid to the retiree in calendar years 1992 through 1998 inclusive.

\* \* \* \* \* \* \*

3. Action on Request for Retroactive Redesignation: Before the city council can act on a request for retroactive redesignation, the [city council] first must approve and authorize the member/retiree's request for recertification for occupational disability pension under 10-12K. Once the request for recertification is approved and authorized, the [city council] will determine whether the request for retroactive

redesignation should be approved, based on all information available in the recertification (10-12K) request. A majority vote of the [city council] will approve and authorize the request for retroactive redesignation.

4.   Once approved by the [city council], a request for retroactive redesignation is irrevocable by the member/retiree.

*      *      *      *      *      *      *

6.   An election to request retroactive redesignation of certain disability pensions must be submitted to the Chief of the Fire Department on or before March 31, 2000.

7.   * * * It is the intent that such payments would be deemed to have been paid in lieu of Worker's Compensation and thus afford non-taxable status to the benefits paid. The City of Cranston, however, makes no warranties that the Internal Revenue Service or any other taxing jurisdiction will abide by such retroactive redesignation.

In January of 2000, after respondent had filed the motion for summary judgment herein, petitioner applied for recertification and retroactive redesignation of disability payments as occupational disability payments pursuant to amended section 10-12. On March 27, 2000, his application was approved by unanimous vote of the city council of Cranston.

Respondent contends that the taxation of income received by petitioner in 1992 should not be governed by an amendment to section 10-12 enacted in 1999, nor by a certification procedure

that did not begin until 2000, after the filing of respondent's motion for summary judgment.  We agree with respondent.[2]

Section 10-12, as amended in 1999, unlike the version of that statute in effect before such amendment, distinguishes between work-related injuries and nonwork-related injuries, which is necessary to qualify as a worker's compensation statute under section 104(a)(1) and section 1.104-1(b), Income Tax Regs. Respondent does not dispute that benefits received for occupational disability pursuant to section 10-12, as amended in 1999, fall under the section 104(a)(1) exemption if the benefits are paid for a period that postdates the amendment.

Therefore, our discussion now turns on the retroactive effect, if any, of amended section 10-12 on payments previously received by petitioner.

It is a long-standing tenet that "state law creates legal interests but the federal statute determines when and how they shall be taxed."  Burnet v. Harmel, 287 U.S. 103, 110 (1932); see United States v. Mitchell, 403 U.S. 190, 197 (1971); Helvering v. Stuart, 317 U.S. 154, 162 (1942); Morgan v. Commissioner, 309 U.S. 78, 80-81 (1940).

---

[2]    The validity and application of an amended local ordinance did come before this Court in Levesque v. Commissioner, T.C. Memo. 1999-57, and McDowell v. Commissioner, T.C. Memo. 1997-500; however, the issue was not fully addressed and the cases did not decide whether to give the amendment retroactive effect for Federal tax purposes.

Giving retroactive effect to a statute has been held appropriate where "the statute does not have the effect of impairing the obligation of a contract and is not destructive of vested rights." Estate of Ridenour v. Commissioner, 36 F.3d 332, 335 (4th Cir. 1994), affg. T.C. Memo. 1993-41. In Estate of Ridenour, a Virginia statute permitting a gifting power to be exercised under power of attorney was held to have retroactive effect for Federal gift tax purposes. The Court of Appeals reasoned that the Virginia statute merely clarified that a court may infer a gift power in appropriate circumstances even though no such power is set forth explicitly in the text of the power of attorney. The Court of Appeals concluded, as did the Tax Court, that the statute neither impaired contractual obligations nor destroyed vested rights which existed prior to the enactment of the statute. See id. at 335.

However, where a nunc pro tunc modification of a State court decree provided for retroactive increases in alimony, it was generally deemed ineffective for Federal income tax purposes. See Torkoglu v. Commissioner, 36 T.C. 552, 555 (1961); Segal v. Commissioner, 36 T.C. 148 (1961); Van Vlaanderen v. Commissioner, 10 T.C. 706 (1948), affd. 175 F.2d 389 (3d Cir. 1949); Daine v. Commissioner, 9 T.C. 47 (1947), affd. 168 F.2d 449, 451-452 (2d Cir. 1948); Blanchard v. Commissioner, 424 F. Supp. 916 (D. Md. 1976).

An exception to the above rule exists where the modification is based on a showing "that the original decree did not correctly state the divorce court's determination at the time of its entry." Johnson v. Commissioner, 45 T.C. 530, 533 (1966); see Vargason v. Commissioner, 22 T.C. 100 (1954); Sklar v. Commissioner, 21 T.C. 349 (1953). Thus, recognition for Federal tax purposes of certain property rights retroactively conferred at the State or local level is not absolute.

In the case before us, petitioner attempts to apply a city ordinance whose sole purpose was to change retroactively the tax status of the payments received by petitioner. Notably, section 10-12, as amended in 1999, does not permit the payment of additional pension amounts when a request for retroactive redesignation is granted. Thus the distinction drawn by the amended ordinance as between nonoccupational injuries, for which disability payments would be measured by 50 percent of salary, and occupational injuries, for which the measure would be 66-2/3 percent, operated with prospective effect only. Petitioner received no extra benefits for the years 1992 through 1998 as a result of the city's recharacterization of his status.

The city council's intent in providing for the retroactive redesignation of a disability pension is made clear in the language of the ordinance: to "provide disability retirees with an opportunity to redesignate benefits as occupational disability

benefits", and to have such payments "deemed to have been paid in lieu of Worker's Compensation" and thus afford nontaxable status to the benefits paid. Finally, the city council makes "no warranties that the Internal Revenue Service or any other taxing jurisdiction will abide by such retroactive redesignation."

This case is distinguishable from <u>Strickland v. Commissioner</u>, 540 F.2d 1196 (4th Cir. 1976), revg. T.C. Memo. 1974-188, cited by petitioner. <u>Strickland</u> involved an award of service-connected disability benefits by the Veteran's Administration (VA). The Court of Appeals for the Fourth Circuit held that a retired veteran of the Army awarded such disability payments was entitled to an exclusion from gross income under section 104(a)(4) and 38 U.S.C. section 3101.[3] Unlike this case, <u>Strickland</u> discussed the effect of a Federal law, namely 38 U.S.C. section 3010, which the Court of Appeals held, clearly contemplated retroactive disability awards in that it permitted the date of application for such an award to be treated as the "effective date" of the award itself. The period of

---

[3] Title 38 U.S.C. sec. 3101(a) provides: Payments of benefits due or to become due under any law administered by the Veterans Administration shall be exempt from taxation."

Title 38 U.S.C. sec. 3101 has been reorganized and renumbered pursuant to the Department of Veterans Health Care Personnel Act of 1991, Pub. L. 102-40, 105 Stat. 187 (1991), and the Department of Veterans Affairs Certification Act, Pub. L. 102-83, 105 Stat. 378 (1991) (codified at 38 U.S.C. sec. 5301 (1999)).

retroactivity allowed for income tax purposes in that case was 9 to 10 months, coinciding with the interval between the veteran's filing and the VA's granting his application for the disability benefits.

In the present case petitioner applied to the city council on January 26, 2000, for recertification of his benefits and the application received final approval the following March 27. There is no dispute presented over the characterization of payments received during the 2-month interim. Rather, petitioner, by relying on section 10-12, as amended in 1999, attempts to recharacterize income received by petitioner in 1992, at least 7 years before. The sole purpose of amended section 10-12 paragraph L, allowing for recertification and redesignation of disability benefits, is to afford a favorable treatment for Federal income tax purposes. We conclude that section 10-12, as amended in 1999, does not grant retroactive effect for Federal tax purposes to the benefits petitioner received in 1992.

Conclusion

This matter is before the Court on cross-motions for summary judgment. The only question raised by this action is a question of law; namely, whether a disability pension amount received during 1992 by petitioner under section 10-12 of the Cranston City Code or the collective bargain agreement should be considered taxable income to him. We hold that the amount

received by petitioner in 1992 is not derived under a "workmen's compensation act" under section 104(a)(1) and thus not excludable from gross income.

We have considered all of the other arguments made by petitioners, and, to the extent we have not addressed them, find them to be without merit.

Accordingly, for the reasons stated above, the Court denies petitioners' cross-motion for summary judgment and grants summary judgment in favor of respondent.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.