Argued and submitted May 15, reversed on appeal; affirmed on cross-appeal November 4, reconsideration denied December 16, 1992, petition for review denied January 26, 1993 (315 Or 311)

Ying Loi HO
and Tony Ying-Hoo Ho,
*Respondents - Cross-Appellants,*

*v.*

PRESBYTERIAN CHURCH
OF LAURELHURST,
*Appellant - Cross-Respondent.*

(8912-07667; CA A68754)

840 P2d 1340

John Folawn, Portland, argued the cause for appellant - cross-respondent. With him on the briefs were Martin W. Jaqua and Holmes & Folawn and Thomas W. McPherson and Rankin, Mersereau, Portland.

David R. Nepom, Portland, argued the cause and filed the brief for respondents - cross-appellants.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

**WARREN, P. J.**

■　　Plaintiffs are the vendee under a land sale contract and his assignee. They brought this action for rescission of the contract after a declaration of forfeiture by defendant vendor. Defendant appeals from a judgment for plaintiffs. The claim for rescission is equitable, and we review *de novo*. *Gardner v. Meiling*, 280 Or 665, 671, 572 P2d 1012 (1977).

In 1979, Ying Loi Ho (Ho) entered into a contract with Union Gospel Mission to purchase a commercial building. Union Gospel Mission assigned its interest in the contract to defendant in 1980. From the outset, Ho has had difficulties meeting the obligations of the contract. Between 1980 and 1989, he and defendant entered into numerous modifications and other agreements by which the parties attempted to work out payment deficiencies. In 1986, in the face of defendant's express denial of permission to do so, Ho assigned his vendee's interest to his brother, Tony, who lives in Hong Kong. At the same time, Tony executed a power of attorney appointing Ho to act on his behalf with regard to the contract property. Ho did not inform defendant of the assignment and continued to deal with defendant as though he were still the sole vendee. Defendant did not learn of the assignment until it had a title search conducted in 1987. Tony has never dealt directly with defendant.

In September, 1988, after further payment difficulties, the parties executed an Assignment of Rents, under which all rents from the property were to be paid directly to defendant. Ho signed the document as attorney-in-fact for Tony. In January, 1989, Ho signed a "Further Agreement in Lieu of Foreclosure," also as attorney-in-fact for Tony. In September, 1989, defendant sent a Notice of Default and Claim of Forfeiture to Ho and to Tony at Ho's Portland address, by which it gave notice that it would declare a forfeiture of the contract if payments were not brought current and back taxes and insurance paid within 90 days. Ho made at least two settlement offers after the notice, but neither was accepted. The default was not cured and, one day after the 90-day period had expired, plaintiffs filed the original complaint in this case, seeking a declaratory judgment that the notice of default was defective. Two days later,

defendant declared a forfeiture and filed an affidavit of forfeiture pursuant to ORS 93.930(1). Plaintiffs then amended their complaint to seek rescission for wrongful forfeiture. The trial court found that the notice of default was defective and therefore invalid, that the forfeiture was wrongful and that plaintiffs were entitled to rescind the contract and obtain restitution of the amounts that they had paid on the contract, less the fair rental value while they were in possession. It also concluded that defendant was estopped to declare a forfeiture because of certain conduct by defendant.

■    Plaintiffs assert that defendant waived its right to appeal by receiving all rents and acting as landlord of the property after the declaration of forfeiture. They argue that those actions constitute an acceptance of the benefits of rescission and, therefore, a waiver of the right to appeal. We disagree. Defendant took possession after its declaration of forfeiture and not in response to the judgment granting rescission. That fact alone distinguishes this case from *Zerkel v. Lindsey*, 270 Or 517, 528 P2d 1041 (1974), on which plaintiffs rely. Defendant's actions were "consistent with what is reasonable for the protection and maintenance of property" and do not establish a waiver. *Miller et ux v. Barker et ux*, 233 Or 113, 120, 377 P2d 343 (1962).[1]

■    Defendant assigns error to the trial court's conclusion that it is estopped to declare a forfeiture.[2] Plaintiffs' theory is that defendant is estopped because, in 1989, before the notice of default was sent, Ho wanted to evict a tenant of the subject property who was not paying rent. Ho testified

---

[1] Plaintiffs also argue that defendant has not preserved the errors that it raises on appeal, because it did not make an appropriate motion challenging the sufficiency of the evidence. Even assuming that such a motion is necessary in a case that we review *de novo, see Brown v. D2S Resources*, 61 Or App 8, 12, 656 P2d 946 (1982), *rev den* 294 Or 682 (1983), the assignments that we find necessary to address do not relate to sufficiency of the evidence, but present only questions of law.

[2] The basis for the trial court's estoppel ruling is something of a mystery. It said:

"I also find that the Defendant Church has estopped to deny, in consideration of the assignment [of] rents, that it promised not to declare a forfeiture. I understand that [Ho] had assigned to the Church the right to collect the rent, but I don't see that there is really any restriction on his power to evict a tenant who hasn't paid for it, irrespective of whether the rent is paid to him or paid to the Church or that he had relied on [defendant's counsel] telling him that he shouldn't do so."

that defendant's counsel told him that, because defendant was receiving the rents directly under the assignment, it was defendant's, and not Ho's, decision whether to evict. The nonpaying tenant was not evicted. Plaintiffs argue:

> "Had plaintiffs not relied on defendants' [*sic*] counsel's representations and evicted the tenant, plaintiffs would have had the opportunity to find a paying tenant for the building, which would have provided further funds to cure any purported default."

■ Equitable estoppel requires that

> "(1) there must be a false representation made with knowledge of the facts, (2) the other party must be ignorant of the facts, (3) the representations must be made with the intent that they be acted upon and (4) the other party must be induced to so act." *Oregon Bank v. Nautilus Crane & Equip. Corp.*, 68 Or App 131, 141, 683 P2d 95 (1984). (Citations omitted.)

Even if the other elements of equitable estoppel were present, plaintiffs do not provide any evidence that they relied to their detriment on counsel's representation, *e.g.*, that they had a paying tenant ready to step into the place of the defaulting tenant that would have provided sufficient funds to make possible curing the default. There is no estoppel.

The trial court also concluded that the notice of default was defective and therefore invalid. Defendant assigns error to the ruling that the notice of default did not comply with the requirements of ORS 93.915 in that it was not properly served on Tony and did not show the amount of default.

The procedure for declaring a forfeiture is governed by ORS 93.910:

> "Whenever a contract for transfer or conveyance of an interest in real property provides a forfeiture remedy, whether the remedy is self-executing or is optional, forfeiture of the interest of a purchaser in default under the contract may be enforced only after notice of the default has been given to the purchaser as provided in ORS 93.915, notwithstanding any provision in the contract to the contrary."

ORS 93.915(1)(a) provides that a notice of default must be in writing and served on the purchaser or the purchaser's "legal representatives, if any." The contents of the notice are governed by ORS 93.915(3):

> "The notice shall specify the nature of the default, the amount of the default if the default is in the payment terms, the date after which the contract will be forfeited if the purchaser does not cure the default and the name and address of the seller or the attorney for the seller."

The statute then specifies the time required before a forfeiture may be declared, which is dependent on the percentage of the purchase price that has been paid by the vendee. There is no issue in this case about the sufficiency of the time given by the notice.

■ Defendant sent a copy of the notice of default to Tony at Ho's Portland address. The trial court found that notice to Tony was defective, because it was not mailed to him in Hong Kong. Defendant argues that, under the power of attorney signed by Tony, Ho was his legal representative and its notice to Ho therefore complied with the statute. Plaintiffs argue that giving notice to Ho as attorney-in-fact for Tony did not comply with the statute, because defendant knew that Tony lived in Hong Kong but made no effort to learn his address there. They assert that the power of attorney did not require Ho to accept notice on Tony's behalf and that Ho, in fact, never accepted the notice on his brother's behalf.

■ A power of attorney is a written authorization that provides evidence of an agency relationship. *Scott v. Hall*, 177 Or 403, 407, 163 P2d 517 (1945). The powers of the agent are those expressly given and those necessary, essential and proper to carry out the powers expressly given. *United States Nat. Bank v. Herron*, 73 Or 391, 399, 144 P 661 (1914). The power of attorney says, in pertinent part:

> "I, Tony Ying-Hoo Ho * * * appoint Ying Loi Ho my true and lawful attorney, for me and in my name, place and stead and for my use and benefit, to do anything regarding the managing, leasing, collecting rents, making deposits, paying bills, and any other dealing regarding the building commonly known as 5620 NE Union Ave, Portland, Multnomah County, Oregon * * *."

Tony made Ho his agent to "do * * * any other dealing regarding" the contract property. That delegation of authority makes Ho the legal representative for Tony in dealings relating to the property. Because ORS 93.915(1) requires that notice be served on the purchaser or the purchaser's legal representative, notice to Tony by sending it to Ho was sufficient.

■      Defendant also assigns error to the trial court's conclusion that the notice was defective because it did not show the amount of default in payments. The notice of default said, in part:

"2.    The contract payment provisions are in default as follows:

"a.    The buyer failed to make timely monthly payments and pursuant to the contract as modified above the principal balance should not be more than $68,440.84 as of September 1, 1989 and the principal balance is actually $81,082.97 * * *.

"b.    Contract provides for the payment of taxes by the buyer. Taxes are in arrears in the sum of $12,194.47 together with interest thereon, plus the 1989-90 taxes that will be due within the period set forth herein.

"c.    The contract provides that buyer provide insurance on the premises. Said insurance has lapsed and the seller has been forced to purchase fire insurance to protect its interest, in the sum of $209.00 together with interest at the contract rate of 11.5% from May 5, 1989."

The trial court concluded that the notice was defective regarding the amount of default in the payment terms but was sufficient regarding the taxes that were in arrears and the fire insurance premium that had not been paid. Plaintiffs do not make a cross-assignment challenging the finding that the notice adequately states that the taxes and insurance premium payments were in default.

Defendant argues that, even assuming that plaintiffs were not in default on payments of principal and interest, the notice is not fatally defective, because it correctly stated the defaults in taxes and insurance. Plaintiffs respond that the purpose of the statute is to give a vendee adequate time to raise the amount specified so that it can cure the default and

thereby avoid a forfeiture. In this case, they argue, they did not get that notice.

The notice was not defective. ORS 93.915(3) requires that the notice of default specify "the amount of the default if the default is in the payment terms." Defendant stated what it claimed was the amount of default in payments by stating the contract balance and what the balance should have been if the payments had been kept current. There is no evidence that those figures were provided other than in good faith. Plaintiffs could ascertain, by simple subtraction, the difference between the stated balances and, therefore, what amount defendant *claimed* was necessary to pay to cure the default. That statement meets the statutory requirement that the amount be specified.[3] The declaration of forfeiture was not wrongful, and plaintiffs were not entitled to rescind.

Because of our disposition of the appeal, defendant's other assignments need not be addressed, and plaintiffs' cross-appeal is moot.

Reversed on appeal; affirmed on cross-appeal.

---

[3] Although plaintiffs argue, and defendant assumes in its argument, that the contract was not actually in default, we find no support for that assumption in the evidence. The only evidence that the payments were not in default is a schedule of payments calculated by plaintiffs, which begins with the December, 1986, payment. The schedule is based on the premise that the payments were current as of December, 1986. Even assuming that the contract was current as of that time, which is extremely unlikely, the manner of applying the rental payments paid directly to defendant under the assignment of rents does not correspond with the testimony. Ho testified that the tenant's rental payments that were assigned to defendant were to be applied, first, to the principal and interest payment, which at that time was $1,240 per month. Any excess, according to the testimony, was to be applied to tax arrearages and other expenses. Only if there were an excess over those amounts would there be any further application to the principal. The calculation on which plaintiffs rely, however, applies all excess payments over $1,240 per month to the delinquency in the contract payments. There is no evidence that that was the agreement, and the only evidence is to the contrary. Accordingly, plaintiffs' calculation showing that they had overpaid the contract when the notice of default was sent is incorrect. The record is insufficient, however, to allow us accurately to calculate the correct amount of default. It is, therefore, also not clear whether plaintiffs' offer of $15,000, even if it was a valid tender, would have been enough to cure the defaults in the contract payments and in taxes and insurance.