MILDRED A. WILKINSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilkinson v. Commissioner
Docket No. 25107-91
United States Tax Court
T.C. Memo 1993-336; 1993 Tax Ct. Memo LEXIS 337; 66 T.C.M. (CCH) 270; July 29, 1993, Filed *337 Decision will be entered under Rule 155. Mildred A. Wilkinson, pro se, and Susan Huffstutter (specially recognized), for petitioner. For respondent: Wesley F. McNamara. DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was heard by Chief Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the Chief Special Trial Judge's opinion, which is set forth below. OPINION OF THE CHIEF SPECIAL TRIAL JUDGE PANUTHOS, Chief Special Trial Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1985 in the amount of $ 22,102 and additions to tax pursuant to section 6651(a)(1) in the amount of $ 5,526; section 6653(a)(1) and (2) in the amount of $ 1,105, and 50 percent of the interest *338 due on the deficiency, respectively; and section 6654 in the amount of $ 1,267. [2]
The issues for decision are: (1) Whether petitioner, under a power of attorney, expended the funds of Thelma D. McCulloch during 1985 for petitioner's benefit and without permission, thereby realizing income in the amount of $ 64,175; (2) whether petitioner is liable for the addition to tax pursuant to section 6651(a)(1) for failure to file a Federal income tax return for the taxable year 1985; (3) whether petitioner is liable for additions to tax for negligence pursuant to section 6653(a)(1) and (2) for failure to report income received; and (4) whether petitioner is liable for the addition to tax pursuant to section 6654 for failure to pay estimated income tax. Respondent determined that petitioner expended the funds of Thelma D. McCulloch (hereinafter McCulloch) for petitioner's benefit and without permission, *339 thereby realizing income which petitioner omitted from her return. According to respondent, McCulloch did not possess the requisite donative intent to qualify these expenditures as gifts. Respondent also determined that petitioner should have filed a Federal income tax return for 1985 and paid the estimated tax for that year. According to petitioner, all of the expenditures in issue were authorized by McCulloch. Petitioner maintains that she received a power of attorney from McCulloch and that the expenditures were carried out by petitioner pursuant to that power for the benefit of McCulloch. Therefore, petitioner argues that she did not receive additional income as determined by respondent. Petitioner also maintains that she was not required to file a Federal income tax return for 1985 because she did not have sufficient income for the year in issue. [3]
FINDINGS *340 OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioner resided in Otis, Oregon, when she filed the petition herein. McCulloch was an elderly woman who never married and had no immediate relatives. She amassed significant personal wealth during her lifetime, resulting in an estate worth over $ 800,000 at the time of her death. Petitioner is married to Melvin Wilkinson (hereinafter husband). They have five daughters, among whom are Susan Huffstutter, Janie Norton, Melanie Leach, and Nancy Ward. Petitioner suffers from multiple sclerosis, which has disabled her since 1974. Her husband also suffers from injuries sustained in a car accident which occurred in 1980. Both petitioner and her husband have not worked for several years, including the year in issue. They support themselves mainly on monthly Social Security disability payments and rental payments received from property they own. Petitioner was introduced to McCulloch through petitioner's mother, Agnes Schreiber, who lived in the same town as McCulloch and who was also her friend. Petitioner and McCulloch became *341 close friends. It was at McCulloch's suggestion that petitioner, in 1978, visited spiritual healers in the Philippines to find a possible cure for ailments she suffered as a result of her multiple sclerosis. In February 1985, while visiting these same spiritual healers in the Philippines, McCulloch became very ill and had to return to the United States. Upon her arrival, she was met by petitioner and her husband and brought to a hospital for examination. McCulloch's attending physician, Dr. John Woo, suggested that she be examined by Dr. Paul Ash (hereinafter Dr. Ash). On February 14, 1985, Dr. Ash diagnosed McCulloch as suffering from terminal brain cancer. Dr. Ash provided assistance to McCulloch until early May 1985. McCulloch's condition rapidly deteriorated soon after her diagnosis. Following the diagnosis, petitioner and her husband began assisting McCulloch through her illness. They attended to her medical needs, which consisted of transporting McCulloch to and from various hospitals for treatment and placing and/or moving McCulloch to various nursing homes. Petitioner and her husband also attended to McCulloch's personal residence, which included the delivery of *342 several household and personal items to various charities in the area as well as disposing of unwanted items. On February 21, 1985, while McCulloch was still in the hospital, she granted petitioner a power of attorney. [4] The February 21, 1985, instrument evincing the power of attorney was presented to McCulloch at the hospital for her signature. The document bears the notation that McCulloch appoints petitioner to "act on my behalf concerning my business affairs, including, but not limited to, deposits and withdrawals from my checking and other accounts held with the First Interstate Bank". *343 Pursuant to the power of attorney, petitioner assumed the management of McCulloch's financial and tax affairs. Petitioner transferred assets held in accounts established in McCulloch's name with First Federal Savings and Loan Association of McMinnville (hereinafter Federal Savings) and Shearson Lehman/American Express (hereinafter Shearson) to joint accounts bearing both petitioner's and McCulloch's names. In addition, petitioner attempted to have most of McCulloch's assets held by various investment firms and banks, including First Interstate Bank of Oregon and Investors Diversified Services (hereinafter First Interstate and IDS, respectively) transferred to a joint account established at Shearson. From April 8, 1985, to May 8, 1985, petitioner wrote checks totaling in excess of $ 64,000. All of the checks were drawn on the joint accounts funded mainly by McCulloch's assets. On or about May 28, 1985, petitioner, her husband, and Agnes Schreiber traveled to the Philippines to visit the spiritual healers. The airfare and living costs associated with the trip were paid for by withdrawals from McCulloch's bank accounts. The particular checks in issue (dated April 8, 1985, through *344 May 8, 1985) which respondent claims constitute taxable income to petitioner are as follows: Payee
Check No.
Amount
Explanation
Provided [1]
FIRST FEDERAL SAVINGS:
Larson Motors
101
$88.77
Car repair
The Furniture Mart
103
650.00
Replace dining set
Unknown
105
3,100.00
Pickup given to Mel
Melanie Leach
106
200.00
Gift from Thelma baby
surgery
Cash
107
150.00
Thelma
Mrs. Janie Norton
108
1,000.00
Gift to Janie
Larson Motors
121
43.61
Starter for car
Unknown
123
17.00
Agnes Schreiber
124
1,500.00
Money owed by Thelma
Meir & Frank
126
1,095.00
TV for Thelma house
Burrell Auto-Elect.
128
61.78
Ignition on car
Randall Ward
130
800.00
Closing cost on house
(petitioner's
son-in-law)
Mr. Marvin H. Schrom
136
1,000.00
Earnest money for home
Sears
139
14.00
Thelma undergarments
Greg Allen Hunt
141
300.00
Legal advice
(petitioner's
son-in-law)
First Federal
142
4,388.00
Asian Holidays
Sears
147
65.92
Bathrobe Thelma
SHEARSON LEHMAN/
AMERICAN EXPRESS:
Flaming Med. Center
864-01350
1,200.00
Petitioner's medical
bills [2]
Pacific State Bank
864-01351
12,308.25
Petitioner's
mortgage [2]
F.D. Bank VISA
864-01352
1,584.93
Petitioner's
Visa bill [2]
First Interstate
864-01353
2,801.35
Petitioner's
loan [2]
Meir & Frank
864-01354
2,844.49
Petitioner's store
account bill [2]
Agnes Schreiber
864-01355
7,500.00
Nancy Ward
864-01356
10,000.00
R.K. Ward
864-01357
10,000.00
TOTAL
[3] $ 62,715.45
*345 In the months following petitioner's receipt of the power of attorney, certain individuals and entities expressed concern about the way McCulloch's affairs were being handled. Petitioner and her husband were aware of the inquiries being made. On or about April 15, 1985, Aladine O'Dell (hereinafter O'Dell), McCulloch's second cousin, requested information from Dr. Ash concerning McCulloch's mental and physical capabilities as of the beginning of March 1985. First Interstate, which had held an investment management account for McCulloch since approximately 1977, also made similar inquiries of Dr. Ash. In Dr. Ash's opinion, McCulloch lacked competency to understand her financial affairs from at least March 1, 1985. In early May 1985, based upon Dr. Ash's opinion, O'Dell petitioned the Circuit Court of Oregon, Marion County, to be appointed McCulloch's guardian. First Interstate petitioned the same court to be appointed conservator of McCulloch's estate. Pending the outcome of the conservatorship petition, First Interstate determined that it would not honor the request for transfer of McCulloch's assets. On May 10, 1985, the Circuit Court of Oregon, Marion County, declared McCulloch *346 incompetent and granted O'Dell guardianship and appointed First Interstate conservator. Upon being appointed conservator, First Interstate attempted to collect McCulloch's assets which petitioner had placed in the joint accounts and also sought an explanation from petitioner concerning the expenditures. Petitioner did not provide First Interstate with an explanation and refused to turn over most of the assets, claiming that it was against McCulloch's wishes. First Interstate informed other institutions of its conservatorship and requested that such institutions not honor any transactions concerning McCulloch's accounts unless authorized by First Interstate. All powers of attorney granted by McCulloch were revoked by First Interstate on May 15, 1985. McCulloch executed a will dated September 13, 1976, and a codicil thereto dated April 29, 1981. The will and codicil provided that a nonprofit charitable organization, the Oregon Community Foundation (OCF), was to receive a large portion of her estate. This will was revoked by a new will executed on April 9, 1985. Under the new will, petitioner and her husband were to receive a sizable portion (approximately $ 170,000) of McCulloch's *347 estate. There was no bequest to OCF. Petitioner was appointed personal representative of the estate under the 1985 will. The record is not clear as to the extent to which petitioner participated in the preparation and execution of the 1985 will. McCulloch died on June 30, 1985. Her will dated April 9, 1985, was submitted for probate by petitioner on July 1, 1985, and, pursuant thereto, petitioner was appointed personal representative of McCulloch's estate. After McCulloch's death, petitioner served a demand on First Interstate for the turnover of any of McCulloch's assets it had collected. First Interstate did not comply with petitioner's request and instead filed a First Accounting and Petition for Instruction with the Circuit Court of Oregon, Yamhill County (hereinafter the probate court). OCF filed a petition on August 6, 1985, with the probate court to contest the April 9, 1985, will and to probate instead the will of September 13, 1976, and its codicil, and to appoint First Interstate as executor of the estate. On September 5, 1985, the Oregon Bank was appointed co-personal representative of the estate. On or about October 30, 1985, petitioner filed her resignation *348 as personal representative of McCulloch's estate. On July 10, 1986, petitioner, on behalf of herself, her husband, her daughters, and her sons-in-law, filed a claim against McCulloch's estate for, among other things, payment for services rendered to McCulloch. The claim was settled with each of the claimants being awarded $ 5,000. During this time, Oregon Bank filed suit against petitioner and her husband (and others) in the probate court seeking an accounting and return of various properties and moneys belonging to McCulloch. In November 1987, petitioner and her husband agreed to a settlement in which they relinquished all claims under the will in exchange for payment by Oregon Bank of $ 46,000 and the receipt of all of McCulloch's tangible personal property being held in storage. Petitioner did not file a Federal income tax return for 1985, nor did she authorize anyone to file on her behalf. Petitioner did not make any estimated income tax payments for 1985. OPINION Respondent determined that petitioner failed to report income for the taxable year 1985. Respondent's determination is presumed to be correct. Petitioner bears the burden of proving it erroneous. Rule 142(a); *349 Welch v. Helvering, 290 U.S. 111, 115 (1933). Respondent seeks to establish that, as of at least March 1, 1985, McCulloch was incapable of forming donative intent and, therefore, the funds expended by petitioner do not constitute gifts. While McCulloch's mental capacity may be of some relevance here, we believe the more important issue is to determine to what extent petitioner's actions were authorized by the power of attorney. [5]
State law controls on the issue of the interpretation of the power of attorney. See Estate of Casey v. Commissioner, 948 F.2d 895, 897 (4th Cir. 1991), revg. on another issue T.C. Memo. 1989-511. Under Oregon law, a power of attorney creates an agency relationship. See Scott v. Hall, 177 Or. 403, 407, 163 P.2d 517, 518 (1945); *350 Ho v. Presbyterian Church, 116 Or. App. 115, 120, 840 P.2d 1340, 1343 (1992). Therefore, the authorities and duties of an attorney in fact are governed by the principles of agency. Scott v. Hall, 177 Or. at 407, 163 P.2d at 518. This includes the prohibitions against an agent's profiting from the agency relationship to the detriment of his or her principal. In conjunction with agency principles, the Court must look to the language of the instrument itself to determine the extent of the agent's authority. The power of attorney permitted petitioner to make deposits and withdrawals from McCulloch's checking and other accounts. The power of attorney does not contain any specific language authorizing petitioner or petitioner's family to personally benefit from payments drawn on McCulloch's accounts. In particular, there is no language authorizing petitioner to make gifts to herself or to her family. This is of particular importance, given petitioner's agency relationship with McCulloch. See Estate of Casey v. Commissioner, supra; In re Burgess, 106 Bankr. 612, 618 (D. Neb. 1989) *351 (if the powers of attorney were liberally construed to permit the agent to make gifts to and for the benefit of the agent, the basic purpose of the agency could be frustrated). Rather the power of attorney authorizes petitioner to act on McCulloch's behalf concerning McCulloch's business affairs. We note that almost all of the expenditures in issue were for petitioner's direct benefit or made to persons related to petitioner. The following expenditures relate to personal expenses of petitioner or her husband: Payee
Check No.
Amount Explanation Provided Larson Motors
101
$ 88.77
Petitioner's car repair
Larson Motors
121
43.61
Starter for petitioner's car
Burrell Auto-Elec.
128
61.78
Petitioner's car repair
Greg Allen Hunt
141
300.00
Legal advice
First Federal
142
4,388.00
Asian holiday
Flaming Med. Center
864-01350
1,200.00
Petitioner's & husband's
medical bills
Pacific State Bank
864-01351
12,308.25
Petitioner's mortgage
payment
F.D Bank VISA
864-01352
1,584.93
Petitioner's credit card
payment
First Interstate
864-01353
2,801.35
Petitioner's loan payment
Meir & Frank
864-01354
2,844.49
Petitioner's account payment
Petitioner failed to present *352 sufficient information to explain how any of these expenditures were authorized under the power of attorney or how the expenditures were for the benefit of McCulloch. For example, petitioner stated in a deposition taken in a separate proceeding on September 16, 1985, and stipulated by the parties (hereinafter the deposition), that the $ 300 paid to Greg Allen Hunt, petitioner's son-in-law, was for legal services provided for petitioner and her husband's benefit. Petitioner stated in the deposition that the legal advice did not concern any of McCulloch's affairs. For many of the other expenses, petitioner stated in the deposition that although they were personal expenses, she and her husband reimbursed McCulloch for the moneys they expended. Petitioner claimed that she was able to pay back McCulloch from the funds she received from selling property she owned. However, when questioned further on this sale, petitioner became very defensive and refused to provide further information. Petitioner provided little information at trial concerning these expenditures and/or alleged reimbursements. There is nothing in the record to indicate that McCulloch intended such expenditures as *353 gifts. We find it difficult to believe that, as McCulloch's agent, petitioner was authorized to draw checks for the payment of her own credit card bills, medical bills, mortgage, and such. Petitioner has failed to prove that these expenditures were authorized under the power of attorney and were not solely for petitioner's benefit. Therefore, we hold that petitioner must include the total of these expenditures as income for the taxable year 1985. See James v. United States, 366 U.S. 213 (1961); Solomon v. Commissioner, 732 F.2d 1459, 1460-1461 (6th Cir. 1984), affg. T.C. Memo. 1982-603. Other expenditures in question concern the payments made to petitioner or individuals related to petitioner. They are as follows: Payee
Check No.
Amount
Explanation Provided Melanie Leach
106
$   200
Gift from Thelma baby surgery
Mrs. Janie Norton
108
1,000
Gift to Janie
Agnes Schreiber
124
1,500
Money owed by Thelma
Randall Ward
130
800
Closing cost on house
Agnes Schreiber
864-01355
7,500
Nancy Ward
864-01356
10,000
R.K. Ward
864-01357
10,000
Petitioner relied almost exclusively on *354 her own testimony to establish the characterization of these expenditures. However, petitioner's testimony is vague and confusing, and more importantly, is contradictory. For example, petitioner stated at the deposition that the check issued to Janie Norton for $ 1,000 (check No. 108) was to be used to raise money for McCulloch. According to petitioner, McCulloch requested her to travel to the Philippines to pay the spiritual healers for service they rendered to McCulloch on her final visit in February 1985. Petitioner stated that she needed approximately $ 40,000 to fulfill McCulloch's request but that she was having difficulty obtaining the funds from McCulloch's account. The plan was to issue the check (as well as other checks) to an individual who would then cash the check and return the funds to petitioner. However, prior to trial, petitioner had noted in a document prepared by her and her husband and presented to respondent that the check written to Janie Norton was intended as a gift by McCulloch. At trial, petitioner presented the same argument about raising money for McCulloch to justify the checks issued to Nancy Ward (check No. 864-01356) and R.K. Ward (check No. *355 864-01357) for $ 10,000 each. However, petitioner no longer argued that the check issued to Janie Norton for $ 1,000 was used for the same purpose. Further inconsistencies concern petitioner's explanation of a check in the amount of $ 200 issued to Melanie Leach (check No. 106) and a check in the amount of $ 1,500 issued to Agnes Schreiber (check No. 124), petitioner's mother. Petitioner stated at the deposition that McCulloch intended the check issued to Melanie Leach to be used to pay Melanie Leach's automobile insurance. However, petitioner indicated in a document prepared by her and her husband, as well as at trial, that McCulloch intended the $ 200 as a gift for Melanie Leach. With respect to the check issued to Agnes Schreiber, petitioner stated at the deposition that the check was part of the plan to raise money for McCulloch. However, at trial petitioner testified that the check was payment for money McCulloch owed Agnes Schreiber. Petitioner provided no evidence concerning the $ 7,500 check issued to Agnes Schreiber. The record does not contain sufficient evidence indicating that McCulloch intended that petitioner expend these funds in this manner when she granted *356 the power of attorney. Petitioner's testimony was unreliable as a result of various contradictions. This Court is not required to accept the self-serving testimony given by a party before this Court. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Petitioner has not met her burden of proof. We, therefore, hold that petitioner must include the total of the expenditures discussed above in income for the taxable year 1985. See James v. United States, supra; Solomon v. Commissioner, supra.The fact that petitioner directed McCulloch's funds to petitioner's relatives or creditors or other persons for petitioner's benefit, rather than receiving them personally, does not prevent the funds from being gross income to petitioner. United States v. Lippincott, 579 F.2d 551, 552 (10th Cir. 1978); Estate of Geiger v. Commissioner, 352 F.2d 221, 231-232 (8th Cir. 1965), affg. T.C. Memo. 1964-153. The remaining expenditures do not appear to benefit either petitioner or individuals related to petitioner. *357 Instead, most of these expenditures pertain to items purchased for McCulloch's personal use. We find that these expenditures were authorized under the power of attorney and for McCulloch's benefit. Therefore, these amounts are not includable in petitioner's income for the taxable year 1985. The checks in this category are as follows: Payee
Check No.
Amount
Explanation Provided
Furniture Mart
103
$  650.00
Replacement dining set
Unknown
105
3,100.00
Pickup given to Mel
Cash
107
150.00
Thelma
Unknown
123
17.00
Meir & Frank
126
1,095.00
TV for Thelma House
Mr. Marvin Schrom
136
1,000.00
Earnest money
Sears
142
14.00
Thelma undergarments
Sears
147
65.92
Bathrobe for Thelma
We next consider whether petitioner is liable for the additions to tax. Section 6651(a)(1) provides for an addition to tax for failure to file a return unless such failure is due to reasonable cause and not due to willful neglect. Petitioner bears the burden of proving that respondent's determination is erroneous. BJR Corp. v. Commissioner, 67 T.C. 111, 130-131 (1976). Petitioner stated that she did not file a return for 1985 because she believed that she *358 did not receive an amount of income requiring such a filing. However, this does not constitute reasonable cause. "In the absence of evidence showing reliance on the advice of competent counsel, mere mistaken belief that no return was required under the statute because of lack of income does not constitute reasonable cause for noncompliance". Heman v. Commissioner, 32 T.C. 479, 490 (1959) affd. 283 F.2d 227 (8th Cir. 1960) (interpreting section 291(a), a predecessor to section 6651(a)); see also Richardson v. Commissioner, T.C. Memo. 1991-258. Accordingly, we hold that petitioner is liable for the addition to tax under section 6651(a)(1) for the 1985 taxable year. Respondent also determined that petitioner is liable for additions to tax for negligence for the year in issue. Section 6653(a)(1) provides for an addition to tax of 5 percent of the amount of any part of an underpayment of tax which is due to negligence or disregard of the rules or regulations. Section 6653(a)(2) provides for an addition to tax of 50 percent of the interest due on that portion of the underpayment attributable *359 to negligence. When an income tax return is not filed, with no reasonable justification for the failure to file, the section 6653(a)(1) and (2) additions will apply to the full amount of the underpayment. Emmons v. Commissioner, 92 T.C. 342, 347-350 (1989), affd. 898 F.2d 50 (5th Cir. 1990). We hold that petitioner is liable for these additions to tax. We next consider whether petitioner is liable for the additions to tax under section 6654(a) for underpayment of estimated income tax for 1985. Petitioner has the burden of proof on this issue. Rule 142(a). Section 6654(c) imposes a requirement that estimated taxes be paid in installments. If a taxpayer fails to pay a sufficient amount of estimated income taxes, section 6654(a) provides for a mandatory addition to the tax in the absence of exceptions provided for in section 6654(e), which are not applicable here. Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). Petitioner failed to pay the estimated taxes for the year in issue. Respondent's determination on this issue is sustained. To reflect our conclusions with respect to the *360 disputed issues, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the tax year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent determined in the notice of deficiency that petitioner is entitled to a personal exemption in the amount of $ 1,040.↩
3. While not argued, we assume that petitioner disputes the estimated tax payment under sec. 6654↩ for the same reasons that she disputes the deficiency.
4. Petitioner recorded two additional documents evincing powers of attorney granted by McCulloch dated Mar. 1, 1985, and Mar. 14, 1985. The Mar. 1, 1985, document bears the notation that petitioner is appointed to be McCulloch's "personal representative on behalf of all my personal and business affairs. Before -- during, and after my life." The Mar. 14, 1985, document bears the notation that petitioner is "To act on my behalf concerning my business affairs including but not limited to deposits and withdrawals from my checking and other accounts held with U.S. National Bank of Oregon."↩
1. The notations reflected in this column appear in a document provided by petitioner to respondent at the examination level. The document was offered by respondent at trial and was not objected to by petitioner.↩
2. Not reflected in the above noted document. However, these expenditures were stipulated by the parties.↩
3. The total of expenditures in issue determined in the notice of deficiency is $ 64,175. We are unable to ascertain the cause of this difference. Respondent has not presented evidence concerning the additional amount; therefore, the omitted income will be limited to the amount set forth as the total of the checks in dispute.↩
5. We will refer to the power of attorney in the singular, although we recognize that petitioner apparently relies upon three separate powers of attorney.↩