T.C. Memo. 2000-287

UNITED STATES TAX COURT

ESTATE OF SUZANNE C. PRUITT, DECEASED, SANDRA S. THOMPSON,
PERSONAL REPRESENTATIVE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19126-97.                    Filed September 12, 2000.

Marc K. Sellers, for petitioner.

Gerald W. Douglas, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge: Respondent determined a deficiency of
$47,660 in petitioner's Federal estate tax. The sole issue[1] for
decision is whether gifts of real property made by decedent's

_____

[1]The remaining adjustments proposed in the notice of
deficiency were not contested in the petition and are deemed to
be conceded. See Rule 34(b)(4), Tax Court Rules of Practice and
Procedure.

attorney-in-fact are includable in decedent's gross estate under section 2038.[2] Resolution of the issue requires us to decide whether decedent's attorney-in-fact was authorized to make the gifts in question by certain powers of attorney granted to her by decedent.

FINDINGS OF FACT

The parties have stipulated some of the facts. The stipulated facts are incorporated in our findings by this reference.

Suzanne C. Pruitt (Mrs. Pruitt or decedent) died on February 11, 1994, from complications of Alzheimer's disease. Decedent's will was admitted to probate in Oregon and decedent's United States Estate (and Generation-Skipping Transfer) Tax Return, Form 706, showed decedent's domicile in Multnomah County, Oregon. Decedent's daughter, Sandra S. Thompson (Ms. Thompson), was appointed personal representative of decedent's estate (the estate). At the time the petition was filed, Ms. Thompson resided in Troutdale, Oregon.

Prior to 1988, decedent and her husband[3] engaged in estate planning discussions with their attorney, James W. Walker (Mr.

---

[2]All section references are to the Internal Revenue Code in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[3]Decedent's husband died in November 1993.

Walker).  Ms. Thompson attended one or two of the meetings at which the discussions took place.  Mr. Walker discussed ways to reduce Mr. and Mrs. Pruitt's projected estate tax liability and advised them on the effect of the Federal gift tax, gifting schedules, and charitable donations.  Mr. and Mrs. Pruitt were concerned about the considerable size of their estate and potential estate tax problems.  Mr. and Mrs. Pruitt wanted their children to inherit as much of their estate as possible.

From 1980 through 1992, in accordance with Mr. Walker's advice, decedent engaged in a pattern of making gifts to her daughters, their husbands, and her grandchildren in an attempt to reduce the size of her estate.  Decedent personally made all the gifts during this period.  The gifts made by decedent from 1980 through 1992 were as follows:

| Donee[1] | Date of Gift | Amount |
|---|---|---|
| Robyn Muckerheide | 1980 | $1,000 |
| Sharon K. Phillips | | 1,000 |
| Sandra S. Thompson | | 1,000 |
| | | |
| Robyn Muckerheide | 1981 | 1,000 |
| Sharon K. Phillips | | 1,000 |
| Sandra S. Thompson | | 1,000 |
| | | |
| Robyn Muckerheide | 1982 | 1,000 |
| Sharon K. Phillips | | 1,000 |
| Sandra S. Thompson | | 1,000 |
| | | |
| Robyn Muckerheide | 1983 | 2,000 |
| Sharon K. Phillips | | 2,000 |
| Sandra S. Thompson | | 2,000 |
| | | |
| Robyn Muckerheide | 1984 | 3,000 |
| Sharon K. Phillips | | 3,000 |
| Sandra S. Thompson | | 3,000 |
| | | |
| Robyn Muckerheide | 1985 | 3,000 |
| Sharon K. Phillips | | 3,000 |
| Sandra S. Thompson | | 3,000 |

| | | |
|---|---|---|
| Robyn Muckerheide | 1986 | 3,500 |
| Sharon K. Phillips | | 3,500 |
| Sandra S. Thompson | | 3,500 |
| | | |
| Robyn & Leo Muckerheide | 10/1987 | 2,500 |
| Sharon & J. Richard Phillips | | 2,500 |
| Sandra S. & Marvin R. Thompson | | 2,500 |
| | | |
| Robyn & Leo Muckerheide | 12/1987 | 5,000 |
| Sharon & J. Richard Phillips | | 5,000 |
| Sandra S. & Marvin R. Thompson | | 5,000 |
| | | |
| Robyn & Leo Muckerheide | 08/1988 | 10,000 |
| Sharon & J. Richard Phillips | | 10,000 |
| Sandra S. & Marvin R. Thompson | | 10,000 |
| | | |
| Robyn & Leo Muckerheide | 12/1988 | 10,000 |
| Sharon & J. Richard Phillips | | 10,000 |
| Sandra S. & Marvin R. Thompson | | 10,000 |
| | | |
| Robyn & Leo Muckerheide | 1989 | 20,000 |
| Sharon & J. Richard Phillips | | 20,000 |
| Sandra S. & Marvin R. Thompson | | 20,000 |
| | | |
| Robyn & Leo Muckerheide | 1990 | 20,000 |
| Sharon & J. Richard Phillips | | 20,000 |
| Sandra S. & Marvin R. Thompson | | 20,000 |
| Tamara Kaye Johnston Irrevocable Trust | | 5,000 |
| Sheri Lea Muckerheide Irrevocable Trust | | 5,000 |
| Troy Alan Muckerheide Irrevocable Trust | | 5,000 |
| Brent Elvin Phillips Irrevocable Trust | | 5,000 |
| Brian Paul Phillips Irrevocable Trust | | 5,000 |
| Kevin Scott Phillips Irrevocable Trust | | 5,000 |
| Shauna Sue Shigeta Irrevocable Trust | | 5,000 |
| Derek Lee Thompson Irrevocable Trust | | 5,000 |
| Jason Rubin Thompson Irrevocable Trust | | 5,000 |
| Kevin Luis Thompson Irrevocable Trust | | 5,000 |
| Shelly Lusandra Thompson Irrevocable Trust | | 5,000 |
| Todd Marvin Thompson Irrevocable Trust | | 5,000 |
| | | |
| Robyn & Leo Muckerheide | 1991 | 20,000 |
| Sharon & J. Richard Phillips | | 20,000 |
| Sandra S. & Marvin R. Thompson | | 20,000 |
| Tamara Kaye Johnston | | 10,000 |
| Sheri Lea Muckerheide | | 10,000 |
| Troy Alan Muckerheide | | 10,000 |
| Brent Elvin Phillips | | 10,000 |
| Brian Paul Phillips | | 10,000 |
| Kevin Scott Phillips | | 10,000 |
| Shauna Sue Shigeta | | 10,000 |
| Derek Lee Thompson | | 10,000 |
| Jason Rubin Thompson | | 10,000 |
| Shelly Lusandra Thompson | | 10,000 |
| Todd Marvin Thompson | | 10,000 |
| | | |
| Robyn & Leo Muckerheide | 02/1992 | 20,000 |
| Sharon & J. Richard Phillips | | 20,000 |
| Sandra S. & Marvin R. Thompson | | 20,000 |
| Tamara Kaye Johnston | | 10,000 |
| Sheri Lea Muckerheide | | 10,000 |

| | | |
|---|---|---|
| Troy Alan Muckerheide | | 10,000 |
| Brent Elvin Phillips | | 10,000 |
| Brian Paul Phillips | | 10,000 |
| Kevin Scott Phillips | | 10,000 |
| Shauna Sue Shigeta | | 10,000 |
| Derek Lee Thompson | | 10,000 |
| Jason Rubin Thompson | | 10,000 |
| Shelly Lusandra Thompson | | 10,000 |
| Todd Marvin Thompson | | 10,000 |
| | | |
| Sandra S. Thompson | 11/1992 | 61,666 |
| Sharon K. Phillips | | 61,667 |
| Robyn Muckerheide | | 61,667 |

[1]Robyn Muckerheide, Sharon K. Phillips, and Sandra S. Thompson are decedent's three daughters. Leo Muckerheide, J. Richard Phillips, and Marvin R. Thompson are decedent's daughters' husbands, respectively. The remaining donees are decedent's grandchildren or related trusts.

With the exception of the November 1992 gifts, decedent transferred the gifted funds by personal check. The November 1992 gifts consisted of stock.

On December 22, 1987, pursuant to Mr. Walker's advice, decedent, while domiciled in Oregon, executed and delivered to Ms. Thompson a durable power of attorney[4] (December 22, 1987, power). The December 22, 1987, power was a standard form (Form No. 853) preprinted by the Stevens-Ness Law Publishing Co., Portland, Oregon. The power appointed Ms. Thompson as attorney-in-fact and granted her specific enumerated powers. Mr. Walker advised decedent that the power would allow Ms. Thompson to do anything decedent could do. Relevant portions of the December 22, 1987, power read as follows:

> KNOW ALL MEN BY THESE PRESENTS, That I, Suzanne C.
> Pruitt have made, constituted and appointed and by
> these presents do make, constitute and appoint Sandra

---

[4]The parties stipulated that each of the powers of attorney was a durable power under Oregon law.

S. Thompson my true and lawful attorney, for me and in my name, place and stead and for my use and benefit,

(1) To lease, let, grant, bargain, sell, contract to sell, convey, exchange, remise, release and dispose of any real or personal property of which I am now or hereafter may be possessed or in which I may have any right, title or interest, including rights of homestead, for any price or sum and upon such terms and conditions as to my said attorney may seem proper;

\* \* \* \* \* \* \*

I hereby give and grant unto my said attorney full power and authority freely to do and perform every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes, as I might or could do if personally present, hereby ratifying and confirming all that my said attorney-in-fact shall lawfully do or cause to be done by virtue hereof.

On March 12, 1992, pursuant to Mr. Walker's advice, decedent, while domiciled in Oregon, executed and delivered to Ms. Thompson two durable powers of attorney (March 12, 1992, powers). One was to be recorded, and the other was for Ms. Thompson to use that same day for matters unrelated to this case. One of the powers was a standard form (Form No. 853) preprinted by the Stevens-Ness Law Publishing Co., Portland, Oregon, (March 12, 1992, No. 1 power), and the other was a standard computer-generated form used by Mr. Walker's office (March 12, 1992, No. 2 power). Each of the March 12, 1992, powers named Ms. Thompson as attorney-in-fact. The language of the March 12, 1992, No. 1 power was identical in many but not all respects to the language

used in the December 22, 1987, power.[5]  Relevant portions of the

March 12, 1992, No. 2 power read as follows:

> I, SUZANNE C. PRUITT, hereby make, constitute and
> appoint SANDRA S. THOMPSON my agent and attorney in
> fact with power and authority to:
>
>     \*     \*     \*     \*     \*     \*     \*
>
> 8.  Convey, sell, mortgage, pledge, consign, lease
> and in any other manner deal in and with my property,
> both real and personal.
>
>     \*     \*     \*     \*     \*     \*     \*
>
> I authorize my attorney for me and in my name
> generally to do and perform all and every act which is
> necessary or desirable to be done in order to properly
> conduct, manage and control all my business and my
> property and to execute and acknowledge any and all
> instruments necessary or proper to carry out the
> foregoing powers, hereby releasing all third persons
> from responsibility for the acts and omissions of my
> attorney.

All three powers of attorney constituted valid and binding

powers of attorney under Oregon law.  At the time decedent

executed and delivered each of the powers,[6] she did so with full

mental capacity.

---

[5]The March 12, 1992, No. 1 power provided that "My said
attorney and all persons unto whom these presents shall come may
assume that this power of attorney has not been revoked until
given actual notice either of such revocation or of my death." It
also contained par. (16) authorizing decedent's attorney-in-fact
to act with respect to certain tax and governmental matters, and
an effective date clause.  The December 22, 1987, power did not
contain similar provisions.

[6]The parties stipulated that none of the powers of attorney
took precedence over or superseded any other power.

On December 30, 1993, and on January 18, 1994, Ms. Thompson, as attorney-in-fact, made gifts of interests in decedent's real property by separate deeds to each of decedent's three daughters (including Ms. Thompson) and their husbands. On the dates of the gifts, decedent's medical condition had deteriorated to the point where she lacked the mental capacity to discuss the gifts with Ms. Thompson. Ms. Thompson did not have any discussions with Mr. Walker prior to making the gifts. Each gift was confirmed by a deed recorded in Multnomah County, Oregon. The gifts are summarized as follows:

| Donee | Property[1] | Transfer date | Property value |
| --- | --- | --- | --- |
| Sandra & Marvin Thompson | ½ interest in 1204 NE Meadow Drive | 12/30/93 | $20,000 |
| Sharon & Dick Phillips | ½ interest in 1125 NE Meadow Drive | 12/30/93 | 15,500 |
| Robyn & Leo Muckerheide | ½ interest in 1137 NE Meadow Drive | 12/30/93 | 19,000 |
| Sandra & Marvin Thompson | ½ interest in 1204 NE Meadow Drive | 01/18/94 | 22,000 |
| Sharon & Dick Phillips | ½ interest in 1125 NE Meadow Drive | 01/18/94 | 15,500 |
| Robyn & Leo Muckerheide | ½ interest in 1137 NE Meadow Drive | 01/18/94 | 19,000 |

[1]All property transferred was real property located in Portland, Oregon.

The estate filed Federal gift tax returns (Form 709) reporting the 1993 and 1994 gifts and claiming six annual gift tax exclusions in each year for the values of the gifts.[7]  As a result, the estate reported no net gifts for 1993 and $2,000 in net gifts for 1994.

The estate filed a timely Federal estate tax return (Form 706) reporting a total gross estate of $1,427,908 and adjusted taxable gifts of $252,000.  The 1993 and 1994 gifts made pursuant to the powers of attorney were not included in calculating decedent's gross estate.  Following an examination, respondent mailed a notice of deficiency to the estate in which respondent determined, among other things, that the 1993 and 1994 gifts "which were transferred during decedent's lifetime by the decedent's attorney in fact under a durable power of attorney that did not expressly authorize the attorney in fact to make gifts are includable in the decedent's gross estate."

OPINION

Respondent's Objections

We first address respondent's objections to the testimony of witnesses Ms. Thompson and Mr. Walker.  At trial, the Court conditionally admitted the testimony over respondent's objection

---

[7]The 1993 and 1994 gifts did not impoverish decedent or adversely impair her ability to support herself.  On the date of her death, decedent owned assets having a value in excess of $1,400,000.

based on the parol evidence rule and directed the parties to
address the issue on brief.  On brief, respondent contended that
petitioner is attempting to expand the powers specifically
granted to Ms. Thompson through the use of oral testimony, which
is prohibited by the parol evidence rule.  Prior to trial and on
brief, respondent raised another general objection to the
testimony, contending it was inadmissible hearsay.

### A.  Respondent's Hearsay Objection

On brief, respondent argued that any third-party testimony
regarding decedent's intent is inadmissible because it is offered
to prove the truth of the matter asserted; namely, that decedent
intended to include a power to make gifts in each of the
three powers of attorney.  Petitioner responded that the
testimony is admissible under rules 803(3) and 807 of the Federal
Rules of Evidence.  Assuming arguendo that the witnesses'
testimony as to decedent's intent is hearsay in the first
instance,[8] we hold that the testimony is admissible under the

---

[8]On brief, respondent made the following arguments that
certain parts of the witnesses' testimony constituted
inadmissible hearsay: (1) "At trial, the decedent's attorney [Mr.
Walker] testified that, with respect to the powers of attorney,
he had discussions with the decedent that the powers allowed the
decedent's daughter to do anything that the decedent could do
* * *.  Any statements by the attorney which relate to this
belief by the decedent, including an implied intent to make gifts
are inadmissible hearsay under FRE 803(3)." (2) "The same
rationale and result [as in (1) above] applies to the overall
testimony of the decedent's daughter [Ms. Thompson]." (3) "In the
present case, it is respondent's position that the testimony of
(continued...)

state of mind exception to the hearsay rule. See Fed. R. Evid. 803(3). The testimony of the witnesses involved decedent's state of mind at the time the powers were executed; the witnesses were credible, and the testimony regarding decedent's intent was relevant to the interpretation of the powers. See <u>Mutual Life Ins. Co. v. Hillmon</u>, 145 U.S. 285 (1892); <u>United States v. Emmert</u>, 829 F.2d 805, 809-810 (9th Cir. 1987). In light of our ruling, we do not, and need not, decide whether the testimony is admissible under rule 807 of the Federal Rules of Evidence.

### B. Respondent's Parol Evidence Objection

Respondent also contends that the testimony of Ms. Thompson and Mr. Walker is inadmissible under Oregon's parol evidence rule because the testimony is being offered to prove that Ms. Thompson was authorized by the powers of attorney to make gifts when, in fact, the powers of attorney contained no such provision. Petitioner contends that the parol evidence rule may not be invoked by a litigant who is not a party to the agreement and that, in any event, the testimony is offered solely to assist

---

[8](...continued)
the decedent's daughter and attorney that the decedent intended her powers of attorney to include the power to make gifts of her property is inadmissible hearsay." We are not convinced that any of the examples cited by respondent are hearsay. See Fed. R. Evid. 801. Nevertheless, we address respondent's argument.

this Court in determining the knowledge and intent of decedent in granting the powers of attorney.

When we are required to make a State law determination as to the existence and extent of legal rights and interests created by a written instrument in order to decide a case over which we have jurisdiction, "we must look to that State's parol evidence rule in deciding whether or not to exclude extrinsic evidence that bears on the disputed rights and interests under the instrument."[9] Estate of Craft v. Commissioner, 68 T.C. 249, 263 (1977), affd. per curiam 608 F.2d 240 (5th Cir. 1979); see also Stevenson v. Commissioner, T.C. Memo. 1986-207 (applying Oregon law); Young v. Commissioner, T.C. Memo. 1985-221. Since this case requires us to decide whether the power to make gifts was granted to Ms. Thompson by the powers of attorney given to her by decedent, we must examine the applicable State parol evidence rule and decide whether it requires us to exclude the disputed testimony. The parties agree that Oregon State law applies.

Oregon's parol evidence rule, codified in Or. Rev. Stat. sec. 41.740 (1999), provides:

> When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or

---

[9]"The so-called parol evidence rule is a misnomer; the rule is one of substantive law and not one of evidence." Estate of Craft v. Commissioner, 68 T.C. 249, 262-263 (1977), affd. per curiam 608 F.2d 240 (5th Cir. 1979).

successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute.  However this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220,[10] or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud.  The term "agreement" includes deeds and wills as well as contracts between parties.

The Supreme Court of Oregon has not applied a literal reading of Or. Rev. Stat. sec. 41.740.  See Hatley v. Stafford, 588 P.2d 603, 605 n.1 (Or. 1978).  Instead, it has treated the statute as a codification of the common-law parol evidence rule. See Abercrombie v. Hayden Corp., 883 P.2d 845, 849 (Or. 1994). In Abercrombie, the Supreme Court of Oregon described the Oregon common-law parol evidence rule as follows:

> The parol evidence rule, in brief, provides that a binding, completely integrated, written agreement supersedes or discharges all agreements, written or oral, that were made before the completely integrated agreement, to the extent that the prior agreements are within the scope of the completely integrated agreement. Restatement (Second) of Contracts § 213(2) (1979).  The rule also provides that a binding, partially integrated, written agreement supersedes or discharges all agreements, written or oral, that were made before the partially integrated agreement, to the extent that the prior agreements are inconsistent with

---

[10]Or. Rev. Stat. sec. 42.220 (1999) provides:

> In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting.

the partially integrated agreement.  Restatement
(Second) of Contracts § 213(1) (1979).  *  *  *
[Abercrombie v. Hayden Corp., 883 P.2d at 850; fn. ref.
omitted.]

"Under Oregon law, a power of attorney creates an agency relationship.  *  *  *  Therefore, the authorities and duties of an attorney in fact are governed by the principles of agency." Wilkinson v. Commissioner, T.C. Memo. 1993-336; see also Scott v. Hall, 163 P.2d 517, 518 (Or. 1945) ("Attorneys in fact created by formal letters of attorney are merely special kinds of agents * * * and in construing such letters or powers and determining their effect the principles of the law of agency apply."); Ho v. Presbyterian Church, 840 P.2d 1340-1343 (Or. Ct. App. 1992). Petitioner argues that Oregon's parol evidence rule does not apply in cases like this where a litigant who is not a party to the power of attorney is attempting to use the rule to exclude evidence regarding the intent of the principal and the circumstances surrounding the execution of the power of attorney.

We need not decide whether a litigant who is not a party to the power of attorney may invoke Oregon's parol evidence rule, codified in Or. Rev. Stat. sec. 41.740 (1999).  Although it is well established under Oregon law that the authority conferred by a power of attorney cannot be enlarged by parol evidence, see United States Natl. Bank v. Herron, 144 P. 661, 663-664 (Or. 1914) (interpreting a limited power of attorney); Wade v. Northup, 140 P. 451, 457 (Or. 1914) (interpreting a general power

of attorney); <u>Coulter v. Portland Trust Co.</u>, 26 P. 565, 569 (Or. 1891) (interpreting a limited power of attorney), it is equally well established that parol evidence may be used to interpret those powers actually given, see <u>Wade v. Northup</u>, <u>supra</u> at 457 ("we may resort to 'the circumstances under which it was made * * *' so that the court may be placed in the position of those whose language it is interpreting"); <u>Coulter v. Portland Trust Co.</u>, <u>supra</u> at 569; see also Or. Rev. Stat. secs. 41.740, 42.230 (1999).[11]

Applying Oregon law, we hold that we properly may consider the testimony of petitioner's witnesses as evidence of the circumstances under which the powers were executed or to interpret an ambiguity in their terms; however, we may not use the testimony to enlarge the authority granted to Ms. Thompson in the powers of attorney. In accordance with these holdings, we admit the testimony in question.

<u>Interpreting the Powers of Attorney</u>

Section 2038(a) provides that a decedent's gross estate includes any interest in property transferred by the decedent for

---

[11] Or. Rev. Stat. sec. 42.230 (1999) provides:

    In the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all.

less than full and adequate consideration if, at the time of decedent's death, the enjoyment of the property was subject to the decedent's power to alter, amend, revoke, or terminate.  See sec. 2038(a)(1).  Respondent asserts that decedent had the power to revoke the gifts made by Ms. Thompson to decedent's three daughters and their husbands on December 30, 1993, and January 18, 1994 (the gifts), because the powers of attorney did not authorize Ms. Thompson to make gifts of decedent's real property; therefore, the gifts must be included in decedent's gross estate. Petitioner contends that the powers of attorney authorized Ms. Thompson to make the gifts and that, therefore, the gifts are not revocable.

The legal effect of gifts made pursuant to a power of attorney is determined according to State law.  See Morgan v. Commissioner, 309 U.S. 78 (1940).  Oregon has not established, either through case law or statute, a bright-line rule flatly prohibiting gifts by attorneys-in-fact to themselves or to third parties absent express written authorization in a power of attorney.[12]  Consequently, we must examine Oregon law, and decide

---

[12]Numerous jurisdictions have adopted the rule that "an agent lacks authority to make a gift of the principal's property unless that authority is expressly given by the language of the power of attorney."  Kunewa v. Joshua, 924 P.2d 559, 565 (Haw. Ct. App. 1996); see also Townsend v. United States, 889 F. Supp. 369, 371-372 (D. Neb. 1995); Aiello v. Clark, 680 P.2d 1162, 1166 (Alaska 1984); In re Estate of Crabtree, 550 N.W.2d 168, 170 (Iowa 1996); Whitford v. Gaskill, 480 S.E.2d 690, 692 (N.C.
(continued...)

the issue presented here as we believe the highest State court would decide it.  See Commissioner v. Estate of Bosch, 387 U.S. 456 (1967); Estate of Goree v. Commissioner, T.C. Memo. 1994-331.

Under Oregon law, powers of attorney must be strictly construed.  See United States Natl. Bank v. Herron, 144 P. 661, 663 (Or. 1914); Wade v. Northup, 140 P. 451 (Or. 1914); Security Sav. Bank v. Smith, 62 P. 794 (Or. 1900); Coulter v. Portland Trust Co., 26 P. at 567.  The rule that a power of attorney must be strictly construed, however, "does not require that it shall be so construed as to defeat the intention of the parties.  * * * A strained construction should never be given to defeat that intention, nor to embrace in the power what was not intended by the parties."  Wade v. Northup, supra at 458 (citing Hemstreet v. Burdick, 90 Ill. 444 (1878)).  "[T]he intention of the donor of the power is the great principle that governs".  Brown v. Laird, 291 P. 352, 354 (Or. 1930).  Although the intention of the donor ordinarily is gleaned from the language of the power of attorney, see id., where the language of the power is broad and is not free from ambiguity, Oregon law requires that we examine the

_____

[12](...continued)
1997); Fender v. Fender, 329 S.E.2d 430, 431 (S.C. 1985); F.M. Stigler, Inc. v. H.N.C. Realty Co., 595 S.W.2d 158, 161 (Tex. Ct. App. 1980); Bryant v. Bryant, 882 P.2d 169, 172 (Wash. 1994). In contrast, at least two States have enacted statutes providing that a general power of attorney contains an implied authority to make gifts of the principal's assets under certain circumstances. See Ala. Code sec. 26-1-2.1 (Michie Supp. 1994); Va. Code Ann. sec. 11-9.5 (Michie 1999).

"circumstances under which it was made, including the situation of the subject and of the parties * * * so that the judge is placed in the position of those whose language the judge is interpreting." Or. Rev. Stat. sec. 42.220 (1999); see also Wade v. Northup, supra at 457 (parol evidence may be used to interpret the language of a general power of attorney).

The parties agree that the three powers of attorney at issue in this case did not expressly authorize Ms. Thompson to make gifts. The parties do not agree, however, whether the power to make gifts can be inferred from the language of the powers of attorney and the circumstances surrounding their execution. Applying Oregon law, we examine the language of the powers of attorney and the facts and circumstances surrounding decedent's execution of the powers of attorney to determine whether the power to make gifts must be inferred in order to give effect to decedent's intent. Our goal is to ascertain whether decedent had the intent to confer gift-giving power upon Ms. Thompson.

The March 12, 1992, No. 2 power, which was prepared by decedent's lawyer, appointed Ms. Thompson as decedent's "agent and attorney in fact" with power and authority to "Convey, sell, mortgage, pledge, consign, lease and in any other manner deal in and with my property, both real and personal." (Emphasis added.) The March 12, 1992, No. 2 power, also authorized Ms. Thompson "to execute and acknowledge any and all instruments necessary or

proper to carry out the foregoing powers, hereby releasing all third persons from responsibility for the acts and omissions of my attorney."

The December 22, 1987, power and the March 12, 1992, No. 1 power were prepared on preprinted standard power of attorney forms published by the same company and used identical language in most respects.  They appointed Ms. Thompson as decedent's "true and lawful attorney" to exercise certain powers "for me and in my name, place and stead and for my use and benefit".  Among those powers was the power to "lease, let, grant, bargain, sell, contract to sell, convey, exchange, remise, release and dispose of" any of decedent's "real or personal property * * * for any price or sum and upon such terms and conditions as to my said attorney may seem proper".  The powers of attorney also contained a general grant, giving Ms. Thompson "full power and authority freely to do and perform every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes, as I might or could do if personally present".

Our review of the March 12, 1992, No. 2 power in particular leads us to conclude that the grant of power authorizing decedent's attorney-in-fact to transfer decedent's real or personal property was sufficiently broad to encompass the power to make gifts.  See sec. 2512(b) ("Where property is transferred

for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift"). Ms. Thompson was authorized by the terms of the March 12, 1992, No. 2 power not only to sell, mortgage, and pledge decedent's property, but also to convey decedent's property. "Convey" is defined in Black's Law Dictionary 301 (5th ed. 1979) as follows:

> To transfer or deliver to another. To pass or transmit the title to property from one to another. To transfer property or the title to property by deed, bill of sale, or instrument under seal. * * *

The authority to convey without any qualification of that authority is broad enough to permit property conveyances for no consideration. Even if the word "convey" is interpreted to mean transfer for consideration, the March 12, 1992, No. 2 power broadly authorized Ms. Thompson to deal with decedent's property "in any other manner" and was not necessarily restricted to transactions for consideration.

In other cases where the applicable State law required us to ascertain the decedent's intent in interpreting a generally worded power of attorney, we have applied a similar analysis. For example, in Estate of Bronston v. Commissioner, T.C. Memo. 1988-510, we examined a power of attorney which granted the attorney-in-fact the authority to convey property without restriction to determine if the power to make gifts could be inferred under New Jersey law. The power of attorney did not

restrict conveyances to those for consideration and contained a broad grant of authority to the attorney-in-fact to do whatever the principal could do if personally present.  After distinguishing several decisions interpreting powers of attorney decided under New Jersey law, we concluded that the specific language in the power of attorney, which authorized the attorney-in-fact to convey property without any apparent restriction, "could authorize gifts in appropriate circumstances."  Id.  We examined the facts and circumstances surrounding the execution of the power of attorney and the making of the gifts, noting that the decedent "historically gave gifts to her children" and had expressed her intention to give them gifts in the year the disputed gifts were made, and we concluded that the attorney-in-fact "acted on behalf of decedent, continuing her usual affairs."  Id.  Based upon our review of the language of the power of attorney and the evidence of the decedent's intent, we held that the power of attorney authorized gifts.  See id.; see also Estate of Neff v. Commissioner, T.C. Memo. 1997-186 (applying Oklahoma law, we concluded that Oklahoma had not adopted a flat prohibition against attorneys-in-fact making gifts to themselves or to third parties absent express written authorization, and that the durable power of attorney at issue included the implied

authority to make irrevocable gifts during the principal's lifetime).

Because the powers of attorney in this case contain language broad enough to include the power to make gifts and, therefore, could be interpreted to authorize Ms. Thompson to make the 1993 and 1994 gifts, we now must examine the facts and circumstances surrounding the execution of the powers of attorney to ascertain whether decedent intended to confer gift-giving power and, if so, whether the gifts in question were "within the spirit of the power conferred upon" Ms. Thompson.  <u>Wade v. Northup</u>, 140 P. at 458; see also <u>Brown v. Laird</u>, 291 P. at 354.

Petitioner offered the following evidence of decedent's intent:  A substantial and consistent pattern of annual gifting extending over a period of 13 years prior to the gifts made by Ms. Thompson; a February 26, 1987, handwritten letter from decedent to her children;[13] decedent's awareness of the potential

---

[13]The handwritten letter, dated February 26, 1987, reads as follows:

Dear Kids of Ours,

    We hope this does not shock you too much, but we * * * [thought] we'd like to share with you some of the rewards of our efforts, and we like to think, "good management."  We * * * [thought] too that it is better, to give to you now, instead of from a will.  Then most of it would be consumed by old Uncle Sam, who is always hungry.  We want <u>you</u> to enjoy it.  It will cause you no income tax, because it has already been paid.

(continued...)

tax liabilities of her estate; the testimony of decedent's daughter, Ms. Thompson, and decedent's attorney, Mr. Walker; and decedent's last will and testament. We review this evidence for what it shows, if anything, about decedent's intent regarding the interpretation of the powers of attorney in this case.

Beginning in 1980 and continuing annually through 1992, decedent made gifts to the natural objects of her bounty. Decedent gave her daughters annual gifts in amounts that increased over time. In 1987, decedent expanded her gifting program to include her sons-in-law and her grandchildren. When decedent executed the first of her three powers of attorney in 1987, the gifting program was well established and steadily growing, and she already had made her annual gifts for 1987. The power of attorney was executed in connection with estate planning by decedent and her husband which was designed to minimize, to the fullest extent possible, the estate and gift tax liability of their estates and to maximize the assets passing to their family.

---

[13](...continued)
    We realize we are getting older and do not need so much so thought it would be nice to share now.

    Just remember, we love you <u>lots</u> and are glad you were born to us.

                                    Lots of love –
                                    Your Daddy + Mom

After the execution of the December 22, 1987, power, decedent continued to make annual gifts of her property, periodically increasing the amount of the gifts and the number of donees.  In February 1992, decedent again made substantial gifts to her daughters, their husbands, and her grandchildren.  We believe this pattern of making annual gifts covering a period of 13 years demonstrates, and is consistent with, decedent's intention to make annual gifts of her property until her death in order to take full advantage of the annual per-donee gift tax exclusion, thereby reducing the amount of estate tax her estate would owe upon her death.

Decedent's intention to make annual gifts to her children in order to minimize her estate tax liability is demonstrated further by her February 26, 1987, letter to her children in which she stated:  "it is better, to give to you now, instead of from a will.  Then most of it would be consumed by old Uncle Sam, who is always hungry.  We want you to enjoy it."  Decedent's intention, shown by annual gifts beginning in 1980 and stated clearly in her 1987 letter to her daughters, was to minimize the potential tax liabilities of her estate by giving annual gifts to her family.

The testimony of decedent's daughter also reinforces petitioner's argument that decedent intended to grant the power to make gifts to her attorney-in-fact.  Ms. Thompson testified that she discussed the "gifting program" on numerous occasions

with her parents, who were concerned about the size of their estates. Ms. Thompson also testified that when decedent delivered the powers of attorney to her, decedent never indicated that Ms. Thompson was prohibited from taking certain acts and decedent gave no specific instructions to Ms. Thompson. Since decedent was told by her attorney, Mr. Walker, that such powers of attorney authorized Ms. Thompson to do whatever decedent could do with her own property, and since each of the powers of attorney contained a general grant of power that would appear to a nonlawyer to be consistent with Mr. Walker's statement to decedent, we do not find it surprising that decedent did not discuss specifically with Ms. Thompson whether Ms. Thompson had the power to continue the annual gifts to decedent's family.

The testimony of decedent's attorney, Mr. Walker, lends support to petitioner's argument. Mr. Walker testified that, when the December 22, 1987, power was executed, "my words were to her that 'this will allow your daughter to do anything that you can do.'" With respect to the March 12, 1992, powers, Mr. Walker testified: "The intent was that the agent under [the power] could do anything that [decedent] could do." Mr. Walker further testified that when he presented the March 12, 1992, powers to decedent for execution, he recalled "using the words 'this will allow your daughter to do anything that you can do.'" When Mr. Walker was asked on cross-examination whether decedent ever told

him whether she specifically wanted to include the power to make gifts in the powers of attorney, Mr. Walker responded: "I think it might have been the other way around. I said that 'this will allow your daughter to do anything that you could do', and we specifically talked about the gifting." The record amply demonstrates that decedent relied upon Mr. Walker's advice and acted upon it. Decedent understood from conversations she had had with Mr. Walker that lifetime gifts were an important estate planning tool and that her powers of attorney authorized her daughter to do anything decedent could do. It is reasonable, therefore, for us to conclude on this record that decedent intended the powers of attorney to include the power to make gifts.

Finally, a review of decedent's will confirms that the 1993 and 1994 gifts were to the same individuals who would have inherited the properties under the terms of decedent's will. In her will, decedent bequeathed all her real and personal property to her three daughters if she was not survived by her husband (decedent's husband died in November 1993).

Petitioner and respondent base their arguments on two opinions of the Court of Appeals for the Fourth Circuit interpreting Virginia State law, Estate of Ridenour v. Commissioner, 36 F.3d 332 (4th Cir. 1994), affg. T.C. Memo. 1993-41, and Estate of Casey v. Commissioner, 948 F.2d 895 (4th Cir.

1991), revg. T.C. Memo. 1989-511.  Petitioner contends that the facts in Estate of Ridenour are analogous to the instant case and that Estate of Casey is factually distinguishable.  Respondent, on the other hand, asserts that the Supreme Court of Oregon would rely heavily on the holding and rationale of Estate of Casey and that the holding in Estate of Ridenour has no application to the present case.  Although each of these cases involves an issue identical to the one presented here and may be helpful to our analysis, the cases applied Virginia State law and are not controlling.

When the Court of Appeals for the Fourth Circuit decided Estate of Casey, Virginia's highest court had not decided whether the power to make gifts must be stated expressly in a power of attorney in order to validate gifts made pursuant to the power of attorney.  See Estate of Casey v. Commissioner, supra at 898.  In the absence of guidance from Virginia's highest court, the Court of Appeals concluded that the power of attorney must be construed strictly.  The Court of Appeals examined the record for the decedent's intent and concluded that the decedent did not intend to confer upon the attorney-in-fact the power to make gifts.  See id.  The power to make gifts was not listed expressly in the power of attorney, and the provisions of the power, read in context, "suggest most strongly that the only asset transfer powers intended to be conferred by the enumeration of the

specific and general powers were transfers for value."  Id. at 901.

The decision of the Court of Appeals for the Fourth Circuit in Estate of Casey is distinguishable from the instant case. Although the power of attorney in Estate of Casey authorized the decedent's attorney-in-fact "To lease, sell, grant, convey, assign, transfer, mortgage and set over" decedent's property, such actions were required to be taken "for such consideration as he may deem advantageous".  Id. at 896.  In addition, the case record as summarized in the opinions of this Court, see Estate of Casey v. Commissioner, T.C. Memo. 1989-511, and the Court of Appeals for the Fourth Circuit does not disclose with the same clarity as in the present case what understanding, if any, decedent had regarding the scope of authority conferred by the power of attorney that she signed.  In contrast, the powers of attorney at issue here do not limit the authority of the attorney-in-fact to conveyances for consideration as she deems advantageous, and the record in the instant case contains evidence from which we can ascertain decedent's intention to confer broad authority on her attorney-in-fact.

The decision of the Court of Appeals for the Fourth Circuit in <u>Estate of Ridenour</u> is also distinguishable.[14]  One year after <u>Estate of Casey</u> was decided, the Virginia legislature enacted a statute recognizing an implied gift power in a power of attorney which grants broad general powers to the attorney-in-fact.[15]  In <u>Estate of Ridenour</u>, the Court of Appeals for the Fourth Circuit,

---

[14]We acknowledge, however, that many of the facts in <u>Estate of Ridenour v. Commissioner</u>, 36 F.3d 332, 335 (4th Cir. 1994), affg. T.C. Memo. 1993-41, are similar to the facts at hand.  For example, the decedent, Joseph Ridenour (Joseph), had a history of making gifts to his family that were, in part, tax driven.  In 1987, Joseph suffered from acute renal failure and could no longer effectively communicate with others.  Acting pursuant to a power of attorney, which contained no language limiting the authority to business transactions or requiring consideration in exchange for the attorney-in-fact's disposition of property, Joseph's son, James, made substantial cash gifts to family members, including himself, from Joseph's checking account. James wrote the checks on Mar. 27, 1987; Joseph died on Apr. 15, 1987.  The gifts were not included as part of Joseph's gross estate on his Federal estate tax return.

[15]Va. Code Ann. sec. 11-9.5 (Michie 1999) provides, in pertinent part, as follows:

> § 11-9.5.  Gifts under power of attorney.--A.  If any power of attorney or other writing (i) authorizes an attorney-in-fact or other agent to do, execute, or perform any act that the principal might or could do or (ii) evidences the principal's intent to give the attorney-in-fact or agent full power to handle the principal's affairs or deal with the principal's property, the attorney-in-fact or agent shall have the power and authority to make gifts in any amount of any of the principal's property to any individuals or to organizations described in §§ 170(c) and 2522(a) of the Internal Revenue Code or corresponding future provisions of federal tax law, or both, in accordance with the principal's personal history of making or joining in the making of lifetime gifts.

affirming the Tax Court, held that the newly enacted statute had retroactive effect and required a decision in favor of the taxpayer.[16]  In this case, however, we are not guided by a specific State statute clarifying when we may infer the power to make gifts from a general power of attorney; therefore, the approach taken in Estate of Ridenour differs from our analysis.

Without an explicit ruling by the Supreme Court of Oregon or a statute enacted by its legislature, we cannot decide this case based on a bright-line rule that an agent lacks authority to make gifts of the principal's property unless the agent is expressly given that power in the power of attorney.  We must rely instead upon Oregon law which requires us to consider both "the strict letter" and "the spirit of the power" conferred upon the agent. Wade v. Northup, 140 P. 451, 458 (Or. 1914).  We recognize the

---

[16]The court noted, however, that its decision in Estate of Casey v. Commissioner, 948 F.2d 895 (4th Cir. 1991), revg. T.C. Memo. 1989-511, and the statute "can be reconciled, with the statute expanding and clarifying the holding of the case". Estate of Ridenour v. Commissioner, supra at 334.  Commenting on the analysis that it applied in Estate of Casey, the court stated:

> This court therefore found that the appropriate method to resolve the question was to review the complete text of the particular instrument and the circumstances of its execution to determine whether we could infer in it a power, though unexpressed, to make the gifts at issue.  * * *  Casey thus stands for the proposition that to infer an implied gift power, the court must look to the intent of the person granting power of attorney. [Estate of Ridenour v. Commissioner, supra at 334.]

potential for "self-dealing" that exists when an agent acting pursuant to a durable power of attorney has the power to make gifts, especially after the principal becomes incapacitated, and we agree that we must be wary when asked to infer from a power of attorney a power to make gifts when the attorney-in-fact has made the gifts in question to herself and to individuals related to her.  See Wilkinson v. Commissioner, T.C. Memo. 1993-336. Acknowledging, as we must, that a decision inferring a power to make gifts from the general language of a durable power of attorney must be made with great caution, we nevertheless must decide this case based on the best information available to us and our review of applicable State law.  After reviewing Oregon law and examining the decisions of the Supreme Court of Oregon, this Court, and other courts for guidance, we are convinced that a decision to infer the power to make gifts from the general language of a durable power of attorney is warranted in this case because (1) there is no case law or statute in the controlling jurisdiction prohibiting an inferred power to make gifts, (2) the controlling jurisdiction considers the principal's intention in interpreting the power of attorney, (3) there is a substantial pattern of gifting by the principal preceding the gifts made by the attorney-in-fact, (4) the gifts made by the attorney-in-fact are consistent with the principal's prior gifting, (5) the gifts do not deplete the principal's assets to the principal's

detriment, and (6) it is clear there has been no fraud or abuse by the agent.

We conclude on the record in this case that it was decedent's intention to include the power to make gifts in the powers of attorney given to Ms. Thompson and that the gifts made by Ms. Thompson on December 30, 1993, and January 18, 1994, were authorized by those powers of attorney.  We hold that decedent did not have the right to revoke the gifts on the date of her death and that the gifts are not includable in decedent's gross estate under section 2038.

We have considered all remaining arguments made by the parties for contrary holdings and, to the extent not discussed, find them to be irrelevant or without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.